PEOPLE v GARCIA

Docket No. 98969. Argued January 11, 1995 (Calendar No. 6). Decided
    April 18, 1995. Rehearing denied *post,* 1231.
    Frank Garcia was convicted by a jury in the Shiawassee Circuit
        Court, Gerald D. Lostracco, J., of second-degree murder and
        possession of a firearm during the commission of a felony. The
        Court of Appeals, WEAVER, P.J., and SHEPHERD and F. D.
        BROUILLETTE, JJ., reversed in an unpublished opinion per cu-
        riam, holding that the defendant was entitled to a new trial
        because the verdict form did not allow a general verdict of not
        guilty of the first-degree felony-murder charge, and, thus, he
        had been impliedly acquitted of first-degree murder (Docket No.
        94233). On remand, the prosecutor filed an information charg-
        ing second-degree murder, armed robbery, and felony-firearm.
        The court granted the defendant's motion to quash the armed
        robbery count. Thereafter, the prosecutor filed an interlocutory
        appeal, and the Court of Appeals, WEAVER, P.J., and SHEPHERD
        and GRIFFIN, JJ., reversed in an unpublished order (Docket No.
        117306). At the second trial, the defendant was found guilty of
        armed robbery. After remand, the Court of Appeals,
        MICHAEL J. KELLY, P.J., and HOOD and T. R. THOMAS, JJ.,
        reversed, holding that the first jury's failure to convict of first-
        degree felony murder, together with the conviction of second-
        degree murder, necessarily established that the defendant was
        not guilty of the lesser-included offense of armed robbery
        (Docket No. 129181). The people appeal.
        The judgment of the Court of Appeals was affirmed by equal
    division.
        Justice RILEY, joined by Justices BOYLE and MALLETT, writing
    for reversal, stated that the defendant's implicit acquittal of
    first-degree murder did not operate as an implied acquittal of
    the predicate offense of armed robbery. The defendant was
    properly retried for the crime of armed robbery.
        The operative inquiry for double jeopardy purposes to deter-
    mine if a person has been implicitly acquitted is whether the
    factfinder was offered a choice to convict the defendant of the
    alleged offense. Implicit acquittal arises only where it is evident
    that the jury has been afforded an opportunity to fully consider

and decide a defendant's guilt or innocence with regard to a lesser offense so that the jury may be presumed to have acquitted the defendant of the greater offense. In this case, the jury was not given such a choice; rather, it was allowed to choose only one verdict, and its conclusion with respect to armed robbery is inherently ambiguous. Therefore, the defendant's double jeopardy rights were not violated during retrial because he was not implicitly acquitted of armed robbery. Even if the collateral estoppel doctrine were to apply to an implied acquittal, neither doctrine may be expanded to the lesser-included offense, armed robbery.

Inconsistent verdicts do not bar retrial in this case on double jeopardy grounds. Inconsistent verdicts suggest that the jury either compromised or was lenient. If the jury was lenient, the defendant was not injured; if it compromised, so that it could not reach a unanimous verdict, the remedy is not dismissal, but declaration of a mistrial, permitting the defendant to be retried for the charges on which the jurors were unable to agree. Moreover, it is possible for a jury to reach separate conclusions on an identical element of two different offenses. There is no reason to vacate a conviction because the verdicts rationally cannot be reconciled. In this case, because the Court of Appeals did not consider the legal possibility of a conviction of second-degree murder and armed robbery where the jury refused to convict of first-degree murder, it erred in concluding that the jury necessarily found or even considered the defendant not guilty of armed robbery.

Justice CAVANAGH, joined by Justice LEVIN, writing for affirmance, stated that the collateral estoppel doctrine and the same-transaction test barred the defendant's subsequent trial for armed robbery.

This is not a case in which second-degree murder was a lesser-included offense of a murder that arose independently of the underlying felony. Moreover, the defendant was not separately charged with armed robbery. Therefore, in the first trial, the only way the jury could have convicted the defendant of armed robbery was as a cognate lesser-included offense of first-degree felony murder. The first jury determined that all the elements of murder had been proven beyond a reasonable doubt when it convicted the defendant of second-degree murder. If it also had determined that the defendant was guilty of armed robbery, it was obligated to return a verdict of guilty of first-degree felony murder. Therefore, it is reasonable to conclude that at least one of the elements of armed robbery was not proven beyond a reasonable doubt and that the issue of the

defendant's guilt of that crime was resolved. Collateral estoppel barred relitigation of those issues during the second trial.

Once the jury impliedly acquitted the defendant of first-degree murder, that charge essentially disappeared—except for the lesser-included offense of which the defendant actually was convicted, second-degree murder. Because armed robbery is not a lesser-included offense of second-degree murder, there was no theory that remained from the first trial that would support a conviction of armed robbery. Because the armed robbery charge was not joined with the murder charges that arose out of the same criminal episode in the first information, the same-transaction test was violated when the prosecutor brought the subsequent armed robbery charge in the second trial.

Chief Justice BRICKLEY, joined by Justices LEVIN and CAVANAGH, writing for affirmance, stated that the doctrine of collateral estoppel is fully applicable in this case and requires reversal of the defendant's conviction of armed robbery. A reviewing court must presume a rational jury in applying the doctrine of collateral estoppel. In the context of successive prosecutions, the presumption of jury rationality is necessary to guard the constitutional guarantee against double jeopardy and the interests it protects, i.e., harassment by the state and the preservation of the finality of judgments. The jury's verdict in the defendant's first trial may or may not have been the product of leniency or compromise, but an appellate court cannot know the answer to the question, and it should not speculate.

Affirmed by equal division.

Justice WEAVER took no part in the decision of this case.

203 Mich App 420; 513 NW2d 425 (1994) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Ward L. Clarkson,* Prosecuting Attorney, and *Randy O. Colbry,* Assistant Prosecuting Attorney, for the people.

*Arnold D. Dunchock (Thomas M. Donnellan,* of counsel), for the defendant.

RILEY, J. *(for reversal).* In this case we decide whether defendant's implicit acquittal of first-degree felony murder, by virtue of his conviction of second-degree murder, prevents retrial of the

lesser-included offense of armed robbery because his guilt or innocence was necessarily determined by the implicit acquittal of first-degree murder. We conclude that defendant was not implicitly acquitted of the lesser-included offense of armed robbery and, therefore, was properly retried for that offense.

I

Defendant Frank Garcia and his companion Ronald Hammond were arrested in connection with a December 3, 1985, carjacking and subsequent fatal shooting of Timothy Kiley. Mr. Kiley was assaulted and shot in the head when he refused Hammond's order to get into the trunk of his car. On a theory of aiding and abetting, Garcia was charged with first-degree felony murder, using armed robbery as the underlying offense. Additionally, he was charged with an alternative count of open murder and possession of a firearm during the commission of a felony. The count of open murder was dismissed by the trial judge before jury deliberation.

The jury deliberated on the remaining two counts. On the first count, first-degree felony murder, the jury was instructed on the lesser-included offenses of second-degree murder and armed robbery. The verdict form[1] instructed the jury regarding the first count:

> You may return only one verdict on this charge. Mark only one box for this count.
>
> ☐ Not guilty of 1st degree felony murder
> ☐ Guilty of 1st degree felony murder
>
> Or Guilty of the lesser included offense of:
>
> ☐ 2nd degree murder
> ☐ Armed robbery. [Emphasis in original.]

---

[1] The original verdict form appears in the appendix.

Significantly, the jury was not afforded the opportunity to return a general verdict of "not guilty" on the entire first count. As to the second count, the jury was told that it could find defendant guilty or not guilty of felony-firearm. The jury found Garcia guilty of second-degree murder and felony-firearm, and he was sentenced to life imprisonment.

Garcia appealed, alleging, inter alia, that the verdict form did not provide the jury with the opportunity to return a general verdict of "not guilty" on count one. On the basis of that fact, the Court of Appeals reversed and held that defendant was entitled to a new trial.[2] Additionally, the Court held that because the jury had impliedly acquitted defendant of first-degree murder, he could not be recharged and convicted of the greater offense of first-degree murder.

On remand, the prosecutor filed an information charging Garcia with three counts: second-degree murder, armed robbery, and felony-firearm. Garcia moved to quash the armed robbery count on double jeopardy grounds because his implied acquittal of first-degree felony murder (through his second-degree murder conviction) also constituted an implied acquittal of the lesser-included offense of armed robbery. The motion to quash was granted. The prosecutor filed an interlocutory appeal, and the Court of Appeals reversed, holding that defendant could be retried for the offense of armed robbery.[3] Defendant did not appeal the order in

[2] Unpublished opinion per curiam, issued October 19, 1988 (Docket No. 94233).

[3] Unpublished order, entered May 15, 1989 (Docket No. 117306).

this Court.[4] At his second trial, Garcia was found guilty of armed robbery and again sentenced to life imprisonment. Defendant appealed, and the Court of Appeals reversed. The Court held that because the first jury did not convict Garcia of first-degree felony murder, and the only difference between that offense and second-degree murder (of which he was convicted) is the concurrent commission of a felony, Garcia could not be retried for that offense.[5]

We granted leave to appeal[6] and now would reverse the decision of the Court of Appeals. We would hold that Garcia's implicit acquittal of first-degree murder did not operate as an implied acquittal of the predicate offense of armed robbery. Defendant was therefore properly retried for the crime of armed robbery and his conviction should be upheld.

---

[4] Defendant's failure to appeal the decision in this Court should preclude him from raising the issue on his subsequent appeal. In the second appeal to the Court of Appeals, the panel held that defendant could be retried for armed robbery. Relying on that decision, the prosecutor filed a new information with armed robbery as one of the charges. After the jury convicted him of armed robbery, Garcia again appealed to the Court of Appeals. Defendant should have been foreclosed from raising that issue because it would violate the law of the case doctrine, which states:

> [I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. [*CAF Investment Co v Saginaw Twp*, 410 Mich 428, 454; 302 NW2d 164 (1981).]

The law of the case doctrine is, therefore, similar to the doctrines of claim and issue preclusion. *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991). However, because the issue was not sufficiently raised before this Court, we do not decide the case on the basis of the law of the case, but rather address the merits of defendant's claim.

[5] 203 Mich App 420; 513 NW2d 425 (1994).

[6] 446 Mich 865 (1994).

II

The Double Jeopardy Clause of the Fifth Amendment mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The Double Jeopardy Clause protects against three general governmental abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Ohio v Johnson,* 467 US 493, 497; 104 S Ct 2536; 81 L Ed 2d 425 (1984).[7] The protections apply to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). In the present case, we are concerned with that part of the Double Jeopardy Clause that prohibits retrial after an acquittal. Specifically, we must determine the scope of that protection to decide whether the defendant has been "implicitly acquitted" of the lesser offense of armed robbery by his conviction of second-degree murder.

A

The seminal case involving retrial after an implicit acquittal is *Green v United States,* 355 US 184; 78 S Ct 221; 2 L Ed 2d 199 (1957). In *Green,* the jury was instructed on the offenses of first- and second-degree murder, and found the defendant guilty of second-degree murder. After a successful appeal, the defendant's conviction was reversed. On remand, the defendant was again tried for first- and second-degree murder and ultimately

---

[7] Citing *Brown v Ohio,* 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977), and *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969). See also *People v Gonzalez,* 197 Mich App 385; 496 NW2d 312 (1992).

convicted of first-degree murder. The Court held that the defendant's retrial on the charge of first-degree murder subjected him to double jeopardy.[8]

Applied to the present case, *Green* precludes retrial of Garcia for first-degree murder. However, *Green* does not specifically address the issue before this Court, i.e., whether defendant may be retried for the lesser-included offense of armed robbery after an implicit acquittal of first-degree felony murder.[9] The theory behind *Green* and its progeny, however, remain essential to our decision. We therefore closely examine the principles underlying *Green* and subsequent cases applying it, in order to determine whether it extends to prohibit Garcia's retrial on the offense of armed robbery. After careful scrutiny of *Green* and its progeny, we conclude that Garcia was not implicitly acquitted of armed robbery and, therefore, his double jeopardy rights were not violated when he was retried for that offense.

In support of this conclusion, we cite the precise

---

[8] The Court stated that "this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'" *Id.* at 191.

See also *Price v Georgia,* 398 US 323, 329; 90 S Ct 1757; 26 L Ed 2d 300 (1970), in which the Court, mindful of its decision in *Green,* stated, "this Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." The Court also stated that the Double Jeopardy Clause protects against "the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." *Id.* at 326.

[9] Justice CAVANAGH fails to recognize this crucial fact and proceeds on the basis that *Green* may be read to preclude retrial of a lesser-included offense. There has, however, been no implicit acquittal of defendant on the charge of armed robbery under *Green.* This novel reading of *Green,* that a defendant may not be retried for a lesser-included offense after an implicit acquittal of the greater offense, extends that decision to bar retrial in a situation clearly not contemplated in *Green.*

factors that *Green* and several ensuing cases have required before determining whether a person was implicitly acquitted. *Green* held that if the jury is "given a full opportunity to return a verdict" on a greater offense and instead convicts on a lesser offense, an implicit acquittal with respect to the greater offense results. *Id.* at 191. An additional *Green* requirement is that "no extraordinary circumstances . . . prevented it from" returning a verdict on the greater offense. *Id.* Several cases have construed and applied this language in the context of different fact patterns—each of which aid us in applying the language enunciated in *Green* to the present case.

One such case was decided by this Court, *People v McMiller,* 389 Mich 425, 431; 208 NW2d 451 (1973).[10] In that case, we concluded that the operative inquiry to determine if a person has been implicitly acquitted is whether the factfinder was offered a *choice* to convict the defendant of the alleged offense. Therefore, the critical element for purposes of jeopardy is the defendant's exposure to such a choice being given to the factfinder.[11] *Id.*

---

[10] We analyze *McMiller* for its application of *Green* while recognizing that it involved a defendant who was retried on a greater offense after pleading guilty of a lesser offense. The Court concluded that "upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction." *Id.* at 434. Therefore, the doctrine of implied acquittal was held to apply to a guilty plea conviction.

However, *McMiller* was abrogated by MCR 6.312, which states:

If a plea is withdrawn by the defendant or vacated by the trial court or an appellate court, the case may proceed to trial on any charges that had been brought or that could have been brought against the defendant if the plea had not been entered.

[11] See *Commonwealth v Tabb,* 491 Pa 372, 377; 421 A2d 183 (1980), in which the Supreme Court of Pennsylvania held that "the *sine qua non* for finding implicit acquittal is failure to convict in the face of full opportunity for conviction." The court found that a plea agreement in which the defendant pleaded guilty of murder generally and

In the present case defendant was not "exposed" to the factfinder's "choice" of convicting him. Because the jury was allowed to choose only one verdict, an extraordinary circumstance envisioned by *Green* resulted, i.e., the jury was not afforded a full opportunity to return a verdict on the offense of armed robbery. Instead, the jury was allowed to choose only one verdict. Thus, we are persuaded that the jury was not given an appreciable choice.[12]

Moreover, the Supreme Court of Georgia has determined that essential to an implicit acquittal of a greater offense is an unambiguous conviction of a lesser-included offense. *Potts v State,* 258 Ga 430, 434; 369 SE2d 746 (1988). We find persuasive the analysis articulated by the *Potts* court. Holding that the verdict for the lesser-included offense was ambiguous,[13] the court stated: "We therefore hold that a necessary premise for application of the *Green-Price* rule—an unambiguous conviction of the lesser-included offense—is not present." *Id.* at 433. Relying on *Green,* the court concluded that "a jury does not have a full opportunity [to convict] if the court restricts the jury's freedom to

a conviction of third-degree murder was entered pursuant to the plea did not preclude him from retrial on first- or second-degree murder. For support, the court cited a similar case, *Commonwealth v Klobuchir,* 486 Pa 241, 252; 405 A2d 881 (1979), in which the court held that no judge or jury was presented with a "choice" in the first prosecution and "[t]hus the linchpin necessary to sustain a theory of double jeopardy based upon successive prosecutions [was] missing."

[12] See discussion in part IV.

[13] Count three alleged that the defendant was guilty of kidnapping involving bodily injury. The court stated that count three accused the defendant of kidnapping, but did not instruct or mention bodily injury. In its verdict, the jury stated that it found the defendant guilty of kidnapping and also that the defendant was " 'guilty as to Count Three . . . .' " *Id.* at 433. The court was unable to determine whether the jury meant to find the defendant guilty of merely kidnapping or kidnapping involving bodily injury, stating: "In light of these conflicting circumstances, we conclude that the verdict is opaque, and thus that it does not support an inference that the jury intended to find Potts guilty of either kidnapping or kidnapping with bodily injury." *Id.*

choose between the greater and lesser offenses."
*Id.* at 434. The court was not able to determine
whether the jury truly chose to convict the defen-
dant on the lesser-included offense.

Unlike *Potts,* the jury clearly convicted the de-
fendant of second-degree murder in the present
case. However, for the same reason *Potts* required
an unambiguous conviction of a lesser-included
offense to impliedly acquit of the greater, we
would hold that an unambiguous verdict must be
rendered with regard to armed robbery in the
present case. Because, in the case at bar, the jury
was restricted from returning more than one ver-
dict, as in *Potts,* it was not afforded a full opportu-
nity to choose between the various offenses, and so
its choice of second-degree murder renders its
conclusion with regard to armed robbery inher-
ently ambiguous. The jury's silence on the offense
of armed robbery is of no significance because the
jury was *required* to remain silent if it determined
that defendant was guilty of second-degree mur-
der, which it did.[14] However, because defendant
was tried on the theory of aiding and abetting,
using duress as his defense, the jury may have
rejected the verdict of first-degree murder in the
exercise of lenity, yet not found his involvement so
minimal as to justify a verdict of merely armed
robbery. As a result of these possibilities, inter
alia, the verdict is ambiguous and any further
analysis of the verdict is mere speculation.[15]

Another decision that clarifies the scope of im-
plicit acquittals is *Johnson v Commonwealth,* 221
Va 736; 273 SE2d 784 (1981).[16] In *Johnson,* the

[14] Moreover, Justice CAVANAGH acknowledges that the jury "did not
express any specific verdict with regard to armed robbery." *Post* at
474.

[15] See n 25.

[16] In *Johnson, supra* at 741, the defendant also claimed that because

defendant was convicted of capital murder and of using a pistol in the commission of murder. He was found not guilty of robbery. The Virginia Supreme Court reversed for instructional error and remanded the case for retrial. The jury instructions in the defendant's first trial produced a dilemma analogous to that produced by the instructions in the present case. The jury was instructed that it would not be able to find the defendant guilty of both capital murder and robbery. After his conviction was reversed and before his second trial, the defendant argued that his case should be dismissed or reformed on grounds of double jeopardy. The defendant alleged that "since he was 'acquitted' of robbery at the first trial he could not be tried for capital murder because the elements of an armed robbery are integral to a conviction of murder in the commission of armed robbery." *Id.* at 739.

The court concluded that the jury did not resolve the issue of the defendant's guilt because, in order to convict the defendant of armed robbery, it would have had to ignore the court's instructions. Similarly, in the present case, because the jury found defendant guilty of second-degree murder, it

robbery is a lesser-included offense of capital murder and "that since every element necessary to establish the corpus delicti of robbery is relevant and essential to the proof of capital murder, the reciprocal nature of the double jeopardy clause prohibit[ed] his conviction of capital murder based on robbery when the defendant had previously been acquitted of that robbery." The defendant's motion was denied and, on retrial, he was again convicted of capital murder.

In determining whether his acquittal of robbery at his first trial precluded retrial of capital murder, the court held that the "dispositive issue is whether for double jeopardy purposes there has ever been a factual acquittal of the defendant on the robbery charge." *Id.* The court held that it "would stultify itself to hold that the jury in this case made a factual finding that Johnson was innocent of robbery. We would have to find that it ignored the court's instruction and that its finding of not guilty under Count I was completely unrelated to the express direction it had received from the court to return such a verdict if it found defendant guilty of capital murder." *Id.*

was precluded from determining defendant's guilt or innocence with regard to armed robbery. Accordingly, it is impossible to hold that the jury in this case had a full opportunity to consider defendant's guilt or innocence with regard to armed robbery.

While *Green, McMiller, Potts,* and *Johnson* are distinguishable, the theories underlying the rules enunciated in those cases provide reasonable bases for the decision in the instant case. From these cases, we glean the rule that an implicit acquittal involves the jury's clear and articulable decision of guilt with regard to a lesser offense, in the face of a full opportunity to convict. In other words, an implicit acquittal arises only where it is evident that the jury has been afforded the opportunity to fully consider and decide the defendant's guilt or innocence with regard to the lesser offense so that the jury may be presumed to have acquitted the defendant of the greater offense. In the present case, it cannot be said that the jury was given such a full opportunity because it was allowed to choose only one verdict. Therefore, the risk that *Green* and its progeny seek to protect was not violated in defendant's retrial because he was not implicitly acquitted of armed robbery.[17]

---

[17] Our conclusion would not violate the double jeopardy risk protected by *Green.* In *Green, supra* at 192, the Court reasoned that to allow the defendant to be retried for first-degree murder because he "waived" his defense of former jeopardy would be to leave the defendant with "no meaningful choice." If he had "waived" his rights, the Court stated, it would be "wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense." *Id.* In that situation the defendant would be taking a "desperate chance" by appealing the case. The Court stated:

The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of

B

Additionally, our decision that defendant's retrial does not violate the principles of *Green* is augmented by the fact that subsequent cases have not prohibited retrial of a defendant for a lesser-included offense after an implicit acquittal of a greater offense. In *Edmonds v United States,* 106 US App DC 373; 273 F2d 108 (1959), the defendant was indicted for first-degree murder, but was convicted of second-degree murder. The conviction was reversed on appeal, and the defendant argued, under *Green,* that he was immune from reprosecution for any offense included in the first-degree murder count of the indictment. The court rejected the defendant's argument and concluded that *Green* stands for the proposition that the defendant could not be retried for first-degree murder because he was implicitly acquitted of that charge. In defining the applicability of *Green,* the court held, however, that *Green* did "not go so far as to say he [could not] be tried again for second degree murder. Indeed a contrary view may be said to be indicated."[18] *Edmonds, supra* at 378.

Similarly, in *United States v Gooday,* 714 F2d 80, 83 (CA 9, 1983), the court addressed the situation in which a jury acquitted a defendant of first-degree murder, but was unable to reach a verdict on the lesser included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. Relying on *Edmonds,* the court concluded that "acquittal on the indictment's first-

former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy. [*Id.* at 193-194.]

Garcia is not exposed to that danger in the present case.

[18] We note that the defendant was retried for second-degree murder, of which he was convicted at his first trial.

degree murder count does not preclude retrial on the three lesser included offenses on which the jury was instructed." The court relied on *Edmonds, supra,* and stated that *Green* gave "independent force to lesser included offenses on which a jury has been instructed under one count of the indictment." *Id.* at 83. In other words, under *Green,* a defendant may be retried for any of the lesser included offenses, but may not be retried for an offense greater than the one of which he was originally convicted.[19] *Edmonds* and *Gooday* have not interpreted *Green* to prohibit retrial for a lesser included offense of the offense of which the defendant was implicitly acquitted. Accordingly, both cases support our conclusion today, that defendant may be retried for armed robbery, which is a lesser-included offense of first-degree felony murder, of which he was implicitly acquitted.

C

Justice Cavanagh contends that the collateral estoppel doctrine as enunciated in *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970), applies so as to preclude defendant's retrial of armed robbery in the present case. In *Ashe,* six men were playing poker in the basement of a home when three or four men armed with a shotgun and pistols broke into the basement and robbed each of the players. The defendant was tried and found not guilty "due to insufficient evidence" of robbery of one of the victims.[20] Sev-

[19] In fact it was held in *United States v Scott,* 437 US 82, 97; 98 S Ct 2187; 57 L Ed 2d 65 (1978), that "a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' "

[20] The jury was instructed that "if the petitioner was one of the robbers, he was guilty under the law even if he had not personally robbed [one of the victims]." *Id.* at 439.

eral weeks later, the defendant was tried again for robbery of one of the other victims. The issue in both trials was whether the defendant was one of the robbers: "For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." *Id.* at 446. The jury in the first trial concluded that the defendant was not one of the robbers. Therefore, the Court held that the federal collateral estoppel rule was embodied in the Fifth Amendment, so that defendant could not be tried for the robbery of another victim. *Id.* at 444-445.

Similarly, in *Turner v Arkansas,* 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972), the defendant was acquitted of murder by a general verdict of not guilty. The defendant was subsequently charged with armed robbery. The Court concluded that the acquittal resolved issues that would preclude the defendant from being tried for armed robbery. The state argued that the jury may have concluded that the defendant robbed the victim but that others actually committed the murder. However, such a result was not possible in light of the jury instructions:

> "An accessory is one who stands by, aids, abets, or assists . . . the perpetration of the crime.
>
>     *   *   *
>
> "All persons being present, aiding and abetting, or ready and consenting to aid and abet, in any felony, shall be deemed principal offenders, and indicted or informed against, and punished as such." [*Id.* at 369.]

In *Turner,* the Court correctly held: "The only logical conclusion is that the jury found him not present at the scene of the murder and robbery . . . ." *Id.*

On the basis of these decisions, Justice
Cavanagh maintains that a final verdict was ren-
dered with regard to armed robbery, and retrial of
that offense is thus barred by collateral estoppel.
We do not agree.[21] As Justice Cavanagh concedes,
in the present case the jury *only* spoke with re-
gard to second-degree murder—guilty. The jury,
therefore, impliedly rendered a decision with re-
gard to first-degree felony murder—not guilty.
Even if the collateral estoppel doctrine applies to a
judgment of implied acquittal pursuant to *Green,*
as Justice Cavanagh maintains, *post* at 479-480,
neither doctrine may be expanded to apply to the
lesser-included offense of that offense which defen-
dant was impliedly acquitted, i.e., armed robbery.
To do so would be to extend the principles of *Ashe,
Turner,* and *Green* far beyond recognizable bound-
aries. On the basis of the instructions given in the
present case,[22] the jury did not render a verdict

---

[21] Justice Cavanagh additionally maintains that because neither
party objected to the instructions, the verdict was a valid and final
judgment with regard to armed robbery. The fact that neither party
objected is wholly irrelevant for purposes of this decision. The issue
here is whether defendant was implicitly acquitted of armed robbery.
The instructions render the verdict with regard to armed robbery
ambiguous. It would be impossible and inappropriate to expect either
counsel to predict and object to the instructions on the ground that
the instructions may lead to a subsequently unexplainable verdict
with regard to armed robbery.

[22] Contrary to Justice Cavanagh's and Chief Justice Brickley's
position, we cannot agree that the jury was *obligated* to return a
verdict of first-degree felony murder if it determined that defendant
was guilty of second-degree murder and guilty of armed robbery. An
instruction regarding the difference between first-degree felony mur-
der and second-degree murder does not obligate the jury to any
rational verdict. *People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982).

[W]hat makes second degree murder rise to the level of, in
this case, first degree felony murder is this added element
necessary for first degree felony murder; that the Defendant,
Mr. Garcia, was committing or attempting to commit a felony;
that is, armed robbery, at the time of the act that caused the
victim, Mr. Timothy Roger Kiley's death.

with regard to armed robbery. *Ashe* and *Turner* involve situations in which an appellate court was able to review the instructions and unequivocally determine that the jury had rendered a decision that precluded a subsequent trial.

Further, in both *Ashe* and *Turner,* the defendants were retried after a jury returned a general verdict of acquittal. In the present case, defendant was convicted and he appealed. This case is therefore more analogous to and should be evaluated under *Green* and its progeny. *Green's* unambiguous holding dictates that defendant could not be retried for the greater offense—first-degree felony murder—after conviction of the lesser-included offense—second-degree murder. *Green* does not prohibit retrial of a lesser-included offense (armed robbery) of the offense for which he was implicitly acquitted (first-degree felony murder). Neither Justice CAVANAGH nor Chief Justice BRICKLEY cites a single case that prohibits retrial of a lesser-included offense after the defendant successfully appeals his conviction and is retried. *Green* very simply and unambiguously states that defendant may not be retried for first-degree felony murder, and defendant was not.[23]

---

[23] Moreover, we do not find Justice CAVANAGH's discussion of *People v White,* 390 Mich 245; 212 NW2d 222 (1973), relevant. In *White,* the defendant was tried and convicted of kidnapping in March, 1969, and then subsequently tried and found guilty in October, 1969, on the charges of rape and felonious assault. All three crimes arose out of the same criminal transaction. The defendant therefore appealed, alleging that his double jeopardy rights had been violated. *Id.* at 251-252. The Court noted:

> At oral argument, the prosecutor conceded the one reason for bringing the charges was because he was unhappy with the sentence defendant received on the kidnapping conviction. He stated that he waited until after the first sentence was given in circuit court before deciding to bring to trial the pending prosecution in recorder's court. Such harassment is prohibited. [*Id.* at 259-260, n 9.]

III

Our review of case law regarding inconsistent verdicts also persuades us that double jeopardy does not bar retrial in this case.[24] The Court of Appeals did not consider the possibility of an inconsistent verdict when it addressed the issue of double jeopardy. Instead the Court held that the jury's failure to convict of first-degree felony murder, together with its conviction of second-degree murder, necessarily established that the jury found Garcia not guilty of armed robbery.[25]

It is evident that retrial of defendant does not violate the principles enunciated in *White,* i.e., prevention of the prosecutor from bringing a subsequent prosecution after obtaining a conviction arising out of the same transaction. The situation in *Garcia* is clearly distinguishable. Defendant was tried and he then appealed that decision, and therefore may be retried for all offenses of which he was not implicitly acquitted. To apply the same-transaction test to this case, as Justice CAVANAGH proposes, so that defendant could not be retried for armed robbery because he was not formally charged with that offense, would be a misapplication of *White:* "strict application of the same transaction test could lead to the anomalous result of foreclosing prosecution for an offense where the state had made a diligent and good faith effort to protect the defendant's constitutional rights." *Id.* at 258, n 6. The present case does not present a situation in which the prosecution is attempting to prosecute defendant for the first time for a new offense. Armed robbery, although not formally charged in the first trial, was a crime that the state originally sought to prosecute. After conviction, defendant appealed and may now be retried for any offense of which he was not acquitted. Defendant was only acquitted of first-degree felony murder. *Green, supra.*

[24] We agree with Justice CAVANAGH that an inconsistent verdict does not necessarily exist in this case. We discuss the issue only because, in order to achieve the conclusion reached by the Court of Appeals and Justice CAVANAGH, it is necessary to conclude that the verdicts are inconsistent, i.e., defendant was impliedly not guilty of first-degree felony murder in the first trial, and any result other than a jury verdict of not guilty with regard to armed robbery would be an inconsistent verdict. We merely hold that such a conclusion is not dictated after a review of the *present* law of inconsistent verdicts.

[25] The Court of Appeals relied on *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), and concluded:

In this case, the only difference between second-degree murder and felony murder is the concurrent commission of armed robbery to elevate second-degree to first-degree. . . . The first

Before *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980), inconsistent verdicts in this jurisdiction could not stand unless explainable on a rational basis.[26] More recently, this Court has recognized the jury's power of leniency and allowed inconsistent verdicts to stand. *Vaughn, supra; People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982). *Lewis* was a consolidated case in which three defendants were charged with committing a

> jury found a murder had been committed, but it did not find an armed robbery had been committed sufficient to elevate its verdict to first-degree murder. Simply put, the jury did not find an armed robbery or its verdict would have been guilty of felony murder. . . . Thus, the jury's acquittal with regard to the felony-murder charge, by implication, served to acquit the defendant of armed robbery. [203 Mich App 425-426.]

We note that *Aaron* held that "Michigan has no statutory felony-murder rule which allows the mental element of murder to be satisfied by proof of the intention to commit the underlying felony." The Court *specifically* held that in order to convict a defendant of murder, "it must be shown that he acted with intent to kill or to inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior [was] to cause death or great bodily harm. We further hold that the issue of malice must always be submitted to the jury." *Id.* at 733.

Notably, the Court's analysis of the jury's verdict was arguably impermissible. In reaching its result, it was necessary for the Court of Appeals to speculate with regard to the jury's verdict. While it is an appellate court's duty to review jury verdicts, it may not speculate regarding a jury's conclusions. *People v Chamblis,* 395 Mich 408, 426; 236 NW2d 473 (1975), citing *Dunn v United States,* 284 US 390, 394; 52 S Ct 189; 76 L Ed 356 (1932), which stated: " 'That the verdict may have been the result of compromise, or of a mistake on the part of the jury is possible. But verdicts cannot be upset by speculation or inquiry into such matter.' " The *Chamblis* Court then explained, "Juries in criminal cases often find defendants not guilty or find persons who have committed the charged greater offense guilty of only a lesser offense in the face of the evidence for reasons satisfactory to them." *Id.*

[26] See, e.g., earlier Court of Appeals opinions: *People v Allen,* 94 Mich App 539; 288 NW2d 451 (1980); *People v Goodchild,* 68 Mich App 226; 242 NW2d 465 (1976); *People v Fields,* 66 Mich App 347; 239 NW2d 372 (1976); *People v Ames,* 60 Mich App 168; 230 NW2d 360 (1975); *People v Johnson,* 58 Mich App 165; 227 NW2d 272 (1975); *People v Phillips,* 43 Mich App 581; 204 NW2d 250 (1972). In light of *Vaughn* and *Lewis,* Justice CAVANAGH improperly relies on *Allen,* which holding is inapposite.

felony and with possession of a firearm during the commission of a felony. The jury acquitted defendants Lewis and Johnson of the underlying felony and convicted them of felony-firearm. The defendants maintained that the verdicts were inconsistent and that their convictions could not stand because they had been acquitted of the underlying felonies and that therefore an element of felony-firearm was not proven.[27]

The Court held that the inconsistent verdicts did not undermine the convictions of felony-firearm. *Id.* at 448. The Court reasoned that "[t]he inconsistency in the instant verdicts suggests that the juries either compromised or were lenient."[28] *Id.* at 450. The Court correctly, and significantly to the present case, stated that if the jury was lenient, the defendant was not injured. Alternatively, if the jury compromised, so that it could not reach a unanimous verdict, the remedy was "not dismissal of the charges, but the declaration of a mistrial,

---

[27] Specifically, we note that it is legally possible for a jury to return a guilty verdict of second-degree murder and armed robbery, without convicting of first-degree murder. *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981).

In *Miller,* each of the three defendants was charged with one count of first-degree murder and three counts of armed robbery. Defendant Ewing was found guilty of second-degree murder and one count of armed robbery. This Court reversed the convictions for improper jury selection procedures and remanded for new trials.

[28] See *Vaughn, supra* at 466, in which this Court held:

Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jurors reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility.

and the defendant can be required to stand trial again on the charges in respect to which the jurors are unable to agree."[29] *Id.* at 452. Despite these decisions, Justice CAVANAGH seems to imply that inconsistent verdicts are not possible in this jurisdiction. *Post* at 484, n 23. Ironically, the majority opinion in *People v Goss (After Remand),* 446 Mich 587, 599; 521 NW2d 312 (1994), held the contrary:

> We conclude that when an accused is charged with an offense that has as an element commission of a predicate offense the jury's consideration of the charged predicate offense and its consideration of that offense again in the context of a compound offense are separate and distinct. The jury's decision regarding the predicate offense does not preclude it from reaching a different conclusion in the context of the compound offense.

Yet, Justice CAVANAGH proposes an entirely different rule in the present case.

---

[29] *People v Goss (After Remand),* 446 Mich 587; 521 NW2d 312 (1994), relied on *Lewis.* In *Goss,* the defendant was convicted of armed robbery and first-degree felony murder. The conviction of armed robbery was affirmed by this Court, but the felony-murder conviction was reversed because of error in the jury instructions. This Court remanded the case for a new trial for felony murder. The issue on appeal was whether the defendant was estopped by res judicata and collateral estoppel from relitigating armed robbery on retrial for first-degree murder. This Court held that the defendant was not estopped to relitigate his claim of armed robbery. Although *Goss* involved the presently irrelevant issues of res judicata and collateral estoppel, in an opinion by Justice LEVIN the Court recognized *Lewis* stating, "[t]he jury's decision regarding the predicate offense does not preclude it from reaching a different conclusion in the context of the compound offense." *Id.* at 599.

Although we do not acknowledge a jury's *right* to return inconsistent verdicts, the jury does have the *power* to do so. Therefore, in the present case, while we do not conclude that the jury had the right to return an inconsistent verdict, it may not be contested that if the jury had done so (which we must assume in order to reach the decision of the Court of Appeals), we would not be able to alter that decision. In other words, on the basis of *Lewis, supra,* and *United States v Powell,* 469 US 57; 105 S Ct 471; 83 L Ed 2d 461 (1984), we would not be able to retool the jury's verdict merely because the verdicts were inconsistent.

Moreover, it is possible for a jury to reach separate conclusions on an identical element of two different offenses. In *United States v Powell,* 469 US 57; 105 S Ct 471; 83 L Ed 2d 461 (1984), the Court addressed the issue whether an acquittal of a predicate offense would preclude conviction of a compound offense that required proof of the predicate offense. The Court, relying on *Dunn v United States,* 284 US 390; 52 S Ct 189; 76 L Ed 356 (1932), held that "there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled." *Id.* at 69. The Court reasoned that the fact that "inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale—that such inconsistencies often are a product of jury lenity." *Id.* at 65.

The Court of Appeals did not consider the legal possibility of a conviction of second-degree murder and armed robbery where the jury has refused to convict of first-degree murder. Therefore, the Court of Appeals erred in concluding that the jury necessarily found or even considered defendant not guilty of armed robbery.

IV

Finally, we consider defendant's contention that *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), precludes his retrial of armed robbery. *Harris* involved a defendant who was convicted of felony murder. The defendant was again brought to trial and convicted on a separate information charging him with robbery with firearms. The defendant moved to dismiss on the ground that the conviction violated the Double Jeopardy Clause. The Court held:

When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one. "[A] person .[who] has been tried and convicted for a crime which has various incidents included in it, . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence." [*Id.* at 682-683. Citations omitted.]

We find *Harris* clearly distinguishable. *Harris* involved a defendant who was *convicted* and then retried for a lesser-included offense. It did not involve an implied acquittal. *Harris* may only be read to prohibit retrial of a lesser included offense after conviction of the greater offense. *Harris* and its progeny do not even address that part of the Double Jeopardy Clause with, which we are presently concerned. *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).[30]

There is no other way to interpret *Harris.* Even Justice CAVANAGH does not dispute our analysis. Citing *Harris* and *Payne v Virginia,* 468 US 1062; 104 S Ct 3573; 82 L Ed 2d 801 (1984), Justice CAVANAGH states: "[T]he instant defendant could not have received separate sentences for convictions of both first-degree felony murder and of the

[30] The Supreme Court again visited the issue in *Payne v Virginia,* 468 US 1062; 104 S Ct 3573; 82 L Ed 2d 801 (1984). The defendant challenged his conviction for robbery after he had been convicted of capital murder committed during the perpetration of the robbery. The Court relied on *Harris* and held that the Double Jeopardy Clause prohibited trial of the defendant for the lesser offense of robbery where he had been convicted of the greater crime of murder. The Court stated: "where 'conviction of a greater crime, murder, cannot be had without conviction of the. lesser crime, robbery . . ., the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.' " *Payne, supra* at 1062, citing *Harris.*

underlying felony, armed robbery." *Post* at 476.
We are not presented with that factual scenario in
this case.[31] It has never been maintained that
defendant could be *convicted* of first-degree felony
murder and subsequently tried and convicted of
armed robbery in violation of *Harris* and *Payne*.

V

The essential issue is whether double jeopardy
bars retrial of defendant for armed robbery where
a jury convicted him of second-degree murder,
thereby implicitly acquitting him of first-degree
felony murder. Although a case of first impression,
we are guided by the rationale of *Green* and its
progeny. We would hold that the jury in the
present case was not afforded a full opportunity to
convict Garcia of armed robbery. Further, we have
determined that the jury's verdict *is* inherently
ambiguous, given the fact that it was allowed to
return only one verdict. Additionally, in its at-
tempt to analyze the jury's verdict, the Court of
Appeals failed to consider that this state recog-
nizes a jury's power to render inconsistent ver-
dicts. Defendant therefore was properly retried for
the offense of armed robbery. The decision of the
Court of Appeals should be reversed.

BOYLE and MALLETT, JJ., concurred with
RILEY, J.

---

[31] Additionally, whether punishments may be considered multiple is
a question of legislative intent. See *People v Robideau*, 419 Mich 458,
485; 355 NW2d 592 (1984), holding:

Under neither the federal nor the Michigan double jeopardy
provisions does this Court sit as a superlegislature, instructing
the Legislature on what it can make separate crimes.

APPENDIX

VERDICT FORM

THE PEOPLE OF THE
STATE OF MICHIGAN          FILE NO. 5673
          VS
FRANK GARCIA
_____/

Count I - 1st Degree Felony Murder

Possible Verdicts:

You may return only one verdict on this charge. Mark only one box for this count.

☐  Not guilty of 1st degree felony murder
☐  Guilty of 1st degree felony murder

or  Guilty of the lesser included offense of:

☑  2nd degree murder .
☐  Armed robbery

Count II - Possession of firearm at time of commission or attempted commission of felony (felony murder).

Possible Verdicts:

You may return only one verdict on this charge. Mark only one box for this count.

☑  Guilty of possession of firearm at time of commission or attempted commission of felony (felony murder).

☐  Not guilty of possession of firearm at time of commission or attempted commission of felony (felony murder).

/s/ Glenn E. Copeland

Jury foreperson

CAVANAGH, J. *(for affirmance)*. In this case, we must determine whether the defendant's double jeopardy guarantees under the federal or state constitution have been violated. The defendant was tried for felony murder. The jury convicted him of the lesser-included offense of second-degree murder without expressly acquitting him of felony murder. After the Court of Appeals reversed his conviction, he was separately charged, tried, and convicted of armed robbery, which was based on the identical factual incident that was at issue in the first trial. The Court of Appeals reversed, relying on the double jeopardy doctrine of implied acquittal. I would hold that the collateral estoppel doctrine and the same-transaction test also barred the subsequent trial of the armed robbery count. Therefore, I would affirm the result reached by the Court of Appeals.

I

The procedural history of the instant case is critical to the resolution of the issue presented. The defendant and codefendant Ronald Hammond each were charged by information[1] with alternative counts of first-degree felony murder[2] and open murder, and with possession of a firearm during the commission of a felony.[3] The charges were based on a 1985 carjacking and fatal shooting. The prosecution's theory was that during the carjacking the two defendants abducted Timothy Roger Kiley. When Kiley refused to get into the trunk, Hammond shot and killed him.

Before jury deliberations, the trial court dis-

---

[1] The original information was filed following an incident that occurred on or about December 3, 1985, in Caledonia Township, Shiawassee County. Count I charged that the defendant "did, while in the perpetration or attempted perpetration of armed robbery, kill and murder one Timothy Roger Kiley . . . ." Count II charged that the defendant, in the alternative, "did murder Timothy Roger Kiley . . . ." Count III charged that the defendant "did carry or have in his possession a firearm, to-wit: a handgun at the time he committed or attempted to commit a felony, to-wit: murder . . . ."

[2] MCL 750.316; MSA 28.548.

[3] MCL 750.227b; MSA 28.424(2).

missed the count of open murder. The trial court instructed the jury that it could find the defendant guilty or not guilty of first-degree felony murder or guilty of one of the lesser-included offenses of second-degree murder or armed robbery. The trial court also instructed the jury that it could find the defendant guilty or not guilty of felony-firearm. The jury found the defendant guilty of second-degree murder and felony-firearm.[4]

The Court of Appeals reversed the convictions of both counts because the jury instructions and the verdict form did not contain a general verdict of not guilty.[5] The panel further held that because the jury had impliedly acquitted the defendant of first-degree felony murder, he could not be recharged with that offense.[6]

The prosecution issued a new information, charging the defendant with second-degree murder, armed robbery, and felony-firearm.[7] The trial court granted the defendant's motion to quash the armed robbery count, ascertaining that the Court of Appeals decision eliminated the felony-murder count. The trial court further reasoned that in the first trial the defendant had not been separately charged with armed robbery and that when the Court of Appeals eliminated the felony-murder count, it also eliminated the included offense of armed robbery. The trial court then concluded that, by the process of elimination, the only re-

[4] The trial court sentenced the defendant to life imprisonment and to two years, respectfully. A separate jury convicted codefendant Hammond of first-degree felony murder and felony-firearm. Unpublished opinion per curiam of the Court of Appeals, issued October 19, 1988 (Docket No. 94233).

[5] *Id.*

[6] We denied leave to appeal. 432 Mich 882 (1989). Justices BOYLE and GRIFFIN favored granting leave to appeal.

[7] The charges arose out of the same incident that occurred on or about December 3, 1985, in Caledonia Township, Shiawassee County.

maining charges were second-degree murder and felony-firearm.

The Court of Appeals peremptorily reversed, reasoning that its previous opinion "does not preclude a new trial on the added count of armed robbery."[8] On retrial, the jury acquitted the defendant of second-degree murder and of felony-firearm, but convicted him of armed robbery.[9]

The defendant appealed. A different panel of the Court of Appeals unanimously reversed the defendant's conviction and remanded for an order discharging him from custody.[10] The panel held that the first jury had impliedly acquitted the defendant of armed robbery when it impliedly acquitted him of first-degree felony murder. The panel then concluded that the second trial of the armed robbery charge violated double jeopardy. We granted leave to appeal.[11]

II

It is essential to our analysis to underscore that the alternate count of open murder did not reach the jury. Therefore, this is *not* a case in which second-degree murder was a lesser-included offense of a murder that arose *independently* of the underlying felony.[12] Moreover, it is critical to emphasize

[8] Unpublished order of the Court of Appeals, entered May 15, 1989 (Docket No. 117306).

[9] The trial court again sentenced the defendant to a life term.

[10] 203 Mich App 420; 513 NW2d 425 (1994).

[11] 446 Mich 865 (1994).

[12] The lead opinion cites *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981), as an example of simultaneous convictions of armed robbery and second-degree murder. First, the defendants in *Miller* were charged with first-degree murder—not first-degree *felony* murder. *Id.* at 322. Therefore, the second-degree murder conviction of one of the defendants was *unrelated* to the independent armed robbery charge. Second, the Court did not address any double jeopardy issues in light of its granting the defendants relief for improper jury selection.

that the defendant was not *separately* charged with armed robbery. Therefore, in the first trial, the *only* way the jury could have convicted the defendant of armed robbery was as a cognate lesser-included offense of first-degree felony murder.[13]

We must therefore consider the significance of the charge that actually was presented to the first jury: first-degree felony murder. In Michigan, the Penal Code differentiates between first-degree and second-degree murder.[14] In *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975), this Court summarized the relationship between these two theories:

> Second-degree murder is always a lesser included offense of first-degree murder. First-degree murder is second-degree (common-law) murder

[13] This Court has held that in determining whether armed robbery is included within a felony-murder count, the issue "is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged, but whether, on the facts of the case at issue, it is." *People v Jankowski,* 408 Mich 79, 91; 289 NW2d 674 (1980). Therefore, because the instant defendant could not have been convicted of first-degree murder without proof of the armed robbery, armed robbery was a lesser-included offense of the murder count, even though the statute provides that first-degree murder may be based on other theories.

[14] MCL 750.316; MSA 28.548, the first-degree murder statute, provides:

> Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate . . . robbery, . . . is murder of the first degree, and shall be punished by imprisonment for life.

By comparison, MCL 750.317; MSA 28.549, the second-degree murder statute, provides:

> All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same.

*plus* an element, *viz.,* either premeditation or the perpetration or attempt to perpetrate an enumerated felony. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). Conversely, second-degree murder is first-degree murder *minus* premeditation or the enumerated felony.[15]

In *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980), this Court thoroughly explored the framework of the felony-murder doctrine in Michigan. After abolishing the rule that the mens rea for first-degree felony murder may be satisfied by proof of the intent to commit the underlying felony, the *Aaron* court held that the prosecutor must prove, as "an essential element of any murder," that the defendant acted with malice. The Court further explained:

> Abrogation of this rule does not make irrelevant the fact that a death occurred in the course of a felony. A jury can properly *infer* malice from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. . . . Thus, whenever a killing occurs in the perpetration or attempted perpetration of an inherently dangerous felony, . . . in order to establish malice the jury may consider the "nature of

---

[15] In *People v Dykhouse,* 418 Mich 488, 510; 345 NW2d 150 (1984) (Cavanagh, J., dissenting), I expressed disagreement with the second sentence of the quotation because first-degree murder is a specific intent crime that requires that the defendant must have had an intent to kill, while second-degree murder is a general intent crime that requires malice, which is "(1) an intent to kill, (2) an intent to inflict great bodily harm, or (3) an intent to create, i.e., knowingly creating, a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." I expressly offered no opinion with regard to the relationship between first-degree felony murder and second-degree murder, referring the reader to *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). *Dykhouse* at 510, n 14.

Justice Boyle, in her separate opinion, stated:

> [S]econd-degree murder is first-degree murder minus premeditation or other aggravating circumstance. [*Id.* at 514.]

the underlying felony and the circumstances sur-
rounding its commission" . . . . *If the jury con-
cludes that malice existed, they can find murder
and, if they determine that the murder occurred
in the perpetration or attempted perpetration of
one of the enumerated felonies, by statute the
murder would become first-degree murder.*

The difference is that the jury may not find
malice from the intent to commit the underlying
felony alone. . . . The prosecution will still be able
to prove first-degree murder without proof of pre-
meditation when a homicide is committed with
malice, as we have defined it, and the perpetration
or attempted perpetration of an enumerated felony
is established. Hence, our first-degree murder stat-
ute continues to elevate to first-degree murder a
*murder* which is committed in the perpetration or
attempted perpetration of one of the enumerated
felonies. [*Id.* at 729-730. Citations omitted; empha-
sis added.]

The Court emphasized that the language of the
Michigan first-degree murder statute elevates a
*murder*—not a *death*—to first degree. *Id.* at 717. A
*murder* that is not elevated to first degree is
*second-degree* murder.[16]

Significantly, the *Aaron* Court stated:

We have . . . held that there are lesser in-
cluded offenses in felony murder and that second-
degree murder is a necessarily lesser included
offense of first-degree murder. *People v Andrew
Carter,* 395 Mich 434; 236 NW2d 500 (1975); *Peo-
ple v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975);
*People v Paul,* 395 Mich 444; 236 NW2d 486
(1975). *One obvious reason for this holding is that
a jury is always entitled to disbelieve evidence of
the felony so that the felony-murder rule would
not come into play.* [*Aaron* at 725 (emphasis
added) (in the omitted footnote, the Court quoted

---

16 MCL 750.317; MSA 28.549.

the *Carter* definitions of first- and second-degree murder).]

The *Aaron* Court concluded:

The first-degree murder statute will continue to operate in that all *murder* committed in the perpetration or attempted perpetration of the enumerated felonies will be elevated to first-degree murder. [*Id.* at 734.]

In the instant case, because the defendant was not separately charged in the first trial with armed robbery, he was only in jeopardy of a conviction of armed robbery as a lesser-included offense of the felony-murder count. Even though the jury heard evidence of the facts supporting the prosecution's theory of armed robbery, and was separately instructed on the lesser-included offense of armed robbery, it did not express any specific verdict with regard to armed robbery. The prosecution did not object to the failure of the jury to render a specific verdict. Therefore, the issue is whether the prosecution could subsequently try the defendant for armed robbery on the basis of the same underlying facts.

III

The federal and Michigan Constitutions both provide that no person in criminal prosecutions shall be subject to double jeopardy.[17] In *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969), the United States Supreme Court held that the Double Jeopardy Clause guarantees three distinct constitutional safeguards:

[17] US Const, Am V; Const 1963, art 1, § 15. The Fifth Amendment Double Jeopardy Clause applies to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784, 787; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

The clause includes a collateral estoppel guarantee. *Ashe v Swenson*, 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970).

The instant case implicates the federal Double Jeopardy Clause strands of collateral estoppel and of multiple prosecution after acquittal. Further, the Michigan same-transaction test is also implicated.

Even though the federal and state constitutions both provide a guarantee against double jeopardy, Michigan jurisprudence often takes a slightly different approach than its counterpart federal. In *People v Wilder*, 411 Mich 328, 348, n 10; 308 NW2d 112 (1981), this Court explained the differences that are significant to the instant case:

> Some confusion may exist over the use of various tests to establish a double jeopardy violation in Federal and state courts. Basically, there are few significant variances between the Federal test and our own. However, some differences do exist and should be noted.
>
> For instance, Michigan has adopted a distinct constitutional position from the Federal courts as pertains to questions of multiple prosecution. See *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). In this regard, Michigan has implemented the minority position espoused in Justice Brennan's "same transaction" analysis in *Ashe v Swenson*, 397 US 436, 453-454; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., concurring). The rule in Michigan as to multiple prosecution is that all crimes arising from the same transaction must be prosecuted in a single

proceeding, except under closely circumscribed conditions. See *People v White,* 390 Mich 245; 212 NW2d 222 (1973). The test we employ in this instance is slightly more protective of defendant's double jeopardy right than the collateral estoppel analysis used by a majority of the Federal Court in *Ashe.*

Clearly, under the multiple punishment strand of double jeopardy, the instant defendant could not have received separate sentences for convictions of both first-degree felony murder and of the underlying felony, armed robbery. *Wilder, supra* at 342. See *Payne v Virginia,* 468 US 1062; 104 S Ct 3573; 82 L Ed 2d 801 (1984); *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977); *People v Harding,* 443 Mich 693, 712; 506 NW2d 482 (1993). Further, after his conviction of second-degree murder, the defendant could not be retried for first-degree murder under the implied acquittal doctrine. *Green v United States,* 355 US 184, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957).[18] The *Green* Court

---

[18] In *Green,* the defendant was separately indicted for arson and first-degree murder. *Id.* at 185. The jury convicted him of arson and second-degree murder. The verdict was silent with regard to first-degree murder. After a successful appeal of the second-degree murder conviction, the defendant was convicted of first-degree murder. The Court held that the defendant had been implicitly acquitted of first-degree murder by his conviction of the lesser-included offense of second-degree murder. The Court explained:

Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. . . . [T]he jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore, it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. [*Id.* at 190-191. Citation omitted.]

explained the rationale of the Double Jeopardy
Clause:

> The underlying idea, one that is deeply in-
> grained in at least the Anglo-American system of
> jurisprudence, is that the State with all its re-
> sources and power should not be allowed to make
> repeated attempts to convict an individual for an
> alleged offense, thereby subjecting him to embar-
> rassment, expense and ordeal and compelling him
> to live in a continuing state of anxiety and insecu-
> rity, as well as enhancing the possibility that even
> though innocent he may be found guilty. [*Id.* at
> 187-188.]

I will now consider the strands of double jeop-
ardy that I believe are implicated in the case at
bar.

IV

Collateral estoppel is included within the double
jeopardy guarantee. *Ashe, supra* at 445. *Ashe* held
that collateral estoppel is "a matter of constitu-
tional fact [that the court] must decide through an
examination of the entire record." *Id.* at 443. The
Court explained its definition:

> "Collateral estoppel" is an awkward phrase, but
> it stands for an extremely important principle in
> our adversary system of justice. It means simply
> that when an issue of ultimate fact has once been
> determined by a valid and final judgment, that
> issue cannot again be litigated between the same
> parties in any future lawsuit. [*Id.*]

The Court rejected a "hypertechnical" approach to
its application, and instead called for a realistic
and rational approach:

> Where a previous judgment of acquittal was

based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other · relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." [*Id.* at 444. Citation omitted.]

In *Ashe,* the Court held that after a jury had acquitted the defendant of robbing one of the players at a poker game, the state could not prosecute the defendant for robbing another player at the same poker game because the jury had determined that "there was at least a reasonable doubt that the petitioner [defendant] was one of the robbers . . . ." *Id.* at 446.

In *Turner v Arkansas,* 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972), the defendant received a general verdict of acquittal for a murder arising out of a robbery.[19] *Id.* at 367. He was then indicted for the same robbery. The parties stipulated that "the evidence the State would present on the robbery charge would be identical with that it introduced on the murder charge." *Id.* at 368. The Court relied on the *Ashe* collateral estoppel doctrine. After making a thorough examination of the entire record, the *Turner* Court reasoned:

[P]etitioner was not charged with robbery at the first trial, but the State has stipulated that the robbery and murder arose out of "the same set of facts, circumstances, and the same occasion." The crucial question, therefore, is what issues a general verdict of acquittal at the murder trial re-

---

[19] The defendant had been involved in a poker game with the victim, Larry Wayne Yates, and with another player, Richard Turner. After the defendant had left the game, the victim was murdered and robbed. *Id.*

solved. The jury was instructed that it must find
petitioner guilty of first-degree murder if it found
that he had killed the decedent Yates either with
premeditation or unintentionally during the
course of a robbery. The jury's verdict thus neces-
sarily means that it found petitioner not guilty of
the killing. The State's theory, however, is that
the jury might have believed that petitioner and
Richard Turner robbed Yates, but that Richard
actually committed the murder. This theory is
belied by the actual instructions given the jury.
The trial judge charged that:

"An accessory is one who stands by, aids, abets,
or assists . . . the perpetration of the crime.

\* \* \*

"All persons being present, aiding and abetting,
or ready and consenting to aid and abet, in any
felony, shall be deemed principal offenders, and
indicted or informed against, and punished as
such." . . .

Had the jury found petitioner present at the
crime scene, it would have been obligated to re-
turn a verdict of guilty of murder even if it be-
lieved that he had not actually pulled the trigger.
The only logical conclusion is that the jury found
him not present at the scene of the murder and
robbery, a finding that negates the possibility of a
constitutionally valid conviction for the robbery of
Yates. [*Id.* at 368-369.]

Collateral estoppel "is and has been directed at
barring a reprosecution directly based on relitigat-
ing findings of ultimate fact permissibly, though
not necessarily, drawn from that evidence . . . ."
*Pugliese v Perrin,* 567 F Supp 1337, 1343 (D NH,
1983) (citation omitted). Moreover, "the Double
Jeopardy Clause precludes relitigation of *any* issue
of ultimate fact finally determined by a valid
judgment of acquittal." *Id.* at 1341, citing *Ashe,*
*supra* at 443, and *Turner* (emphasis added). Under

*Green,* I believe that "acquittal" would extend to a judgment of implied acquittal.

*Ashe* and *Turner* direct us to examine the entire record. My examination of the instant record reveals that both informations arose from the same carjacking, which occurred on or about December 3, 1985, in Caledonia Township, Shiawassee County, involving the robbery and death of Timothy Roger Kiley. My examination of the record also reveals that both juries received substantially similar jury instructions.

In the first trial, the trial court instructed the jury:

> Now, it is charged in this case that Frank Garcia either directly committed the crime—the crimes charged; that is, First-Degree Felony Murder, or the second count of Felony Firearm. Or that he intentionally aided or assisted another person in the commission of those crimes.
>
> All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense or as an aider and abettor.
>
> *   *   *
>
> Now, you are concerned in this case with basically two degrees of murder as it relates to the charge of Felony Murder. And the degrees I'm talking about are First Degree Felony Murder or Second Degree Murder.
>
> You will first be instructed on murder in the second degree, because all of the elements of second degree are also contained as elements of first degree murder.
>
> The difference between first degree murder—excuse me, between first degree felony murder and second degree murder is that for second degree murder, the Defendant Frank Garcia need not have been committing or attempting to commit or assisting another in the commission of the crime

of armed robbery at the time which caused Mr. Timothy Kiley's death.

If you find the Defendant guilty of Murder, it is your duty to state the degree in your verdict; that is, he's guilty of first degree felony murder or guilty of second degree murder.[20]

The trial court then gave nearly identical instructions regarding the elements of second-degree murder and first-degree felony murder, adding that the jury also must find that the defendant committed or attempted to commit or was assisting his codefendant in committing the crime of armed robbery.[21] The trial court then instructed

[20] The trial court instructed the jury on the elements of second-degree murder:

As I've already indicated to you, second degree murder is a necessarily lesser included offense within first degree felony murder. To establish second degree murder, the prosecution must prove each of the following elements beyond a reasonable doubt.

Number one, that the deceased Timothy Roger Kiley died on or about December 3, 1985, within the County of Shiawassee, State of Michigan.

Number two, that Timothy Roger Kiley's death was caused by the Defendant; that is, that Timothy Kiley died as a result of a bullet wound to the head.

Number three, that if you find the death was caused by the Defendant, you must determine whether the Defendant is guilty of any . . . crime.

\* \* \*

The fo[u]rth element that the prosecution must prove beyond a reasonable doubt for second degree murder is that for second degree murder, you must find that the Defendant, Mr. Frank Garcia, acted with a certain state of mind in causing the death of Timothy Kiley. You must find that the Defendant Frank Garcia intended to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result of his act.

[21] The trial court gave the following first-degree felony-murder instructions:

Number one. First, that Mr. Timothy Kiley died on or about, again, December 3, 1985, in Shiawassee County, Michigan.

the jury with regard to the elements of armed
robbery.[22]

---

Number two, that his death was caused by the Defendant;
that is, that Timothy Roger Kiley died as a result of a bullet
wound to the head.

Number three, that if you find the death was caused by the
Defendant Frank Garcia, you must determine whether the
Defendant is guilty of any crime.

* * *

The fo[u]rth element of first degree felony murder which the
prosecution must prove beyond a reasonable doubt is that for
first degree felony murder, you must find proof beyond a
reasonable doubt that the Defendant acted with a certain state
of mind in causing the death of Timothy Roger Kiley. You
must find the Defendant possessed the following state of mind
at the time of the killing.

That the defendant Frank Garcia intended to create a very
high risk of death or great bodily harm with knowledge that
death or great bodily harm was the probable result of the act of
robbery armed.

*Fifth, that at the time of the act which caused the death of
Timothy Roger Kiley, the Defendant was committing or at-
tempting to commit or assisting another in the commission of
the crime of robbery armed.* [Emphasis added.]

[22] The trial court stated:

So, the elements of robbery armed are as follows.

That the Defendant, Mr. Frank Garcia, assaulted Timothy
Kiley. And there are two ways to commit an assault. The
Defendant must have attempted or threatened to do an imme-
diate bodily harm to the victim while possessing the intent and
present ability to injure. Or the Defendant must have commit-
ted a forceful act that placed the victim in reasonable fear of
immediate bodily harm while intending to put the victim in
such fear.

Secondly, that at the time of such assault, the Defendant was
armed with a dangerous weapon. . . .

[T]hird, that at the time of such assault, the Defendant took
the money or property alleged to have been taken; that is,
money or property which did not belong to the Defendant.

Fo[u]rth, that this money or property was taken from the
person or in the presence of the victim Timothy Kiley. . . .

The next element is that the property taken must have been
of some value, but the extent of the value makes no
difference. . . .

Six, there must have been some movement of the property in
order to make the crime complete. . . .

Seven, at the time of the taking, the Defendant must have

Moreover, the trial court again emphasized the difference between felony murder and second-degree murder:

> [W]hat makes second degree murder rise to the level of, in this case, first degree felony murder is this added element necessary for first degree felony murder; that the Defendant, Mr. Garcia, *was committing or attempting to commit a felony; that is, armed robbery,* at the time of the act that caused the victim, Mr. Timothy Roger Kiley's death. [Emphasis added.]

At the close of the jury instructions, the trial court asked counsel if either had any objections to the instructions. Both answered that they had no objections.

*Ashe* instructs us to find that the first jury's judgment, as it pertained to the armed robbery element, was a valid and final judgment. *Id.* at 443. I believe that verdict was final, especially in view of the fact that neither party objected to the verdict before the jury was dismissed. I also believe that the verdict was valid in that the jury, after hearing all the evidence and after being instructed on all the elements of felony murder, second-degree murder, and armed robbery, rendered a verdict that followed the instructions it was given. The jury, with full opportunity to do so, chose not to find the defendant guilty of felony murder, but guilty of second-degree murder. The jury, which was carefully instructed that the only difference between second-degree murder and felony murder was the aggravating circumstance of armed robbery, found the defendant guilty only of second-degree murder. The instructional error that

---

intended to permanently deprive Timothy Roger Kiley of the property taken.

led to reversal, i.e., that the jury verdict form did not contain a specific general verdict of acquittal, favored the prosecution.[23]

[23] Arguably, the jury had the full opportunity to acquit the defendant of all charges by marking the box for not guilty of felony murder. More importantly, I would argue that where second-degree murder is presented to the jury *only* as a lesser-included offense of felony murder, and where the jury is properly instructed that the only difference between second-degree murder and felony murder is the underlying felony, *Aaron* would compel us to find that the defendant simultaneously could not be convicted of second-degree murder and of the underlying felony without violating the Legislature's clear mandate that a murder committed during an armed robbery is first-degree murder. MCL 750.316; MSA 28.548.

In *Wilder,* this Court stated:

> Whether an offense is a logically included or legislatively included offense, the offense is the "same" offense for double jeopardy purposes under *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). See *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374, 406-407; 280 NW2d 793 (1979) (Kavanagh, J., dissenting), app dis sub nom *Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979). First-degree felony murder requires proof of the underlying felony. See *Whalen v United States,* 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980). Nor does this suggested approach alter the analysis under our state constitutional prohibition against double jeopardy. The legislatively determined lesser included offense, the underlying felony, is a necessary prerequisite to a first-degree felony-murder conviction and, on the facts of this case, renders them the "same" offense. [*Wilder, supra* at 342, n 6.]

The Court continued:

> Under Michigan authority, the fact that the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery does not mean the offense of armed robbery is not necessarily included in the felony murder here. It is recognized that the underlying felony might be characterized as a cognate lesser included offense, not a necessarily included offense. See *State v Thompson,* 280 NC 202, 215-216; 185 SE2d 666, 675 (1972). Though theoretically arguable, such a position is irrelevant when the legal analysis depends not upon the theoretical elements of the offense but upon proof of facts actually adduced. We stated in *People v Jankowski* [n 13 *supra* at] 91:
> "For purposes of the double jeopardy analysis, as a matter of state constitutional law, the question is not whether the challenged lesser offense is by definition necessarily included within

*Ashe* further directs us to determine whether a rational jury could have grounded its verdict on an issue other than the failure to prove beyond a reasonable doubt that the instant defendant was guilty of armed robbery. See *id.* at 444. Under *Aaron,* if the jury had found the defendant guilty of murder, i.e., second-degree murder, *and* guilty of the underlying felony, armed robbery, then the first-degree murder *statute* would have elevated the *murder* to first-degree felony murder. *Id.* at 730. The first jury determined that all the elements of *murder* had been proven beyond a reasonable doubt when it convicted the defendant of second-degree murder. If the jury had also determined that the prosecutor had proven beyond a reasonable doubt that the defendant was guilty of armed robbery, it was *obligated* by the jury instructions to return a verdict of guilty of first-degree felony murder. Therefore, the reasonable conclusion is that the jury found that at least one of the elements of armed robbery was not proven beyond a reasonable doubt. As directed by *Turner,* I would conclude that the issue whether the defen-

> the greater offense also charged, but whether, on the facts of
> the case at issue, it is." [*Wilder, supra* at 345-346.]

Therefore, armed robbery was a lesser-included offense of felony murder. On the facts of the case at issue, I would further argue that the second-degree murder offense is the "same" offense as the armed robbery offense where, but for the armed robbery, the jury would not even have been instructed on the second-degree murder count. But for the underlying felony, no murder count would have reached the jury. Therefore, where the jury instructions, which complied with *Aaron,* obligated the jury to return a verdict of guilty of felony murder if it found the defendant guilty of murder and guilty of armed robbery, I believe that under the first-degree murder statute, the jury could *not* have returned separate verdicts of guilty of second-degree murder and guilty of armed robbery. Under the facts before it, the jury instructions would have obligated the jury to return the verdict of guilty of felony murder. Where the Legislature has determined a single punishment for felony murder, I would argue that imposing simultaneous sentences for second-degree murder and for armed robbery would violate the multiple punishment strand of double jeopardy.

dant was guilty of armed robbery was resolved by the first jury.

We must continue and examine the second trial to determine whether the same facts and theory of armed robbery were improperly presented to the second jury. At the second trial, the trial court instructed the jury with regard to the counts in the information.[24] The court also gave a specific instruction with regard to the elements of armed robbery.[25] Again, the prosecutor did not object to the instructions given.

---

[24] The court stated that the information charged:

[I]n Count II, that the defendant, Frank Garcia, did assault a certain person, to-wit: Timothy Rogers [sic] Kiley, while being armed with a dangerous weapon or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, to-wit: a handgun, and did then and there feloniously rob, steal and take from the person of said victim or in his presence certain property, to-wit: an automobile, contrary to the laws made and provided for in this State of Michigan.

[25] The trial court instructed the jury:

To establish this charge [of armed robbery], the prosecution must prove each of the following elements beyond a reasonable doubt:

Number one, that the defendant assaulted Timothy Kiley. . . .

Second, the second element is that at the time of the assault, the defendant was armed with a weapon designed to be dangerous and capable of causing death or a serious bodily harm.

The third element of armed robbery is that at the time of such assault, the defendant took the automobile alleged to have been taken which did not belong to the defendant.

The fourth element of armed robbery is that this automobile was taken from the person or in the presence of Timothy Kiley. . . .

The fifth element of armed robbery is that the automobile taken must have been of some value but the extent of the value makes no difference.

The sixth element of armed robbery is that there must have been some movement of the automobile in order to make the crime complete. . . .

A seventh element of armed robbery is that at the time of the taking, the defendant must have intended to permanently deprive Timothy Kiley of the automobile taken.

I believe that the factual basis of the armed robbery charge at the second trial was identical to the factual basis of the armed robbery element of felony murder that was produced at the first trial. Because the first jury resolved the issue of guilt regarding the armed robbery theory in the defendant's favor, the collateral estoppel doctrine barred relitigation of those issues at the second trial.

V

This Court has adopted the "same transaction" test, which is even broader than the federal collateral estoppel rule. *White, supra.*[26] The Court explained:

The use of the same transaction test in Michigan will promote the best interests of justice and sound judicial administration. In a time of overcrowded criminal dockets, prosecutors and judges should attempt to bring to trial a defendant as expeditiously and economically as possible. A far more basic reason for adopting the same transac-

---

[26] Justice Brennan's concurring opinion in *Ashe,* argued that the same-transaction test was the best test to fulfill the guarantee of the Double Jeopardy Clause. *Id.* at 252. The *White* majority quoted from Justice Brennan's opinion:

"In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction. This 'same transaction' test of 'same offence' not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." [*Id.* at 254, quoting *Ashe, supra* at 454 (Brennan, J., concurring).]

tion test is to prevent harassment of a defendant. The joining of all charges arising out of the same criminal episode at one trial ". . . will enable a defendant to consider the matter closed and save the costs of redundant litigation." It will also help ". . . to equalize the adversary capabilities of grossly unequal litigants" and prevent prosecutorial sentence shopping. "In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection." [*People v White*,] 41 Mich App 370, 378; 200 NW2d 326, 330 (1972).

In Michigan, the equivalent of the same transaction test has long been the standard applied to civil actions through GCR 1963, 203.1 and the doctrines of collateral estoppel and res judicata. The purposes behind requiring a plaintiff to raise in one action all of his claims against a defendant that arose out of the same transaction are to conserve the state's judicial resources and to prevent harassment of the defending party. *People v Noth*, 33 Mich App 18, 40; 189 NW2d 779, 789 (1971) (Levin, J., dissenting). "One would think that standards as high as those applied in civil litigation . . . would be applied without hesitation in the enforcement of the constitutional right of the citizen secured by the Double Jeopardy Clause in the Bill of Rights." *Id.* [*White, supra* at 258-259.]

*White* cautioned that situations may arise in which the same-transaction test should yield if the application of the rule would not serve the objective of meaningful protection for the defendant against double jeopardy, giving examples of crimes that were not yet completed, or not yet discovered, in spite of due diligence by the police. *Id.* at 258, n 6.[27] In the instant case, the armed robbery crime

[27] A similar approach was taken in *Webster v State*, 549 So 2d 784 (Fla App, 1989). The court reversed a felony-murder conviction because of insufficient evidence. The court also barred reprosecution for lesser-included offenses:

[B]ecause of an insufficiency of the evidence, appellant cannot

was fully completed and discovered at the time that the first information was prepared. Therefore, I find no reason to fit this case within the *White* exception. The prosecution, for whatever reason, chose not to separately charge the defendant with armed robbery.

Once the jury impliedly acquitted the defendant of first-degree murder, that charge essentially disappeared—except for the lesser-included offense of which the defendant was actually convicted, second-degree murder.[28] Because armed robbery is not a lesser-included offense of second-degree murder, there was no remaining theory from the first trial that would support a conviction of armed robbery. Because the prosecution did not join the armed robbery charge with the murder charges that arose "out of the same criminal episode"[29] in the first information, it violated the same-transaction test when it brought the subsequent armed robbery charge at the second trial.

VI

In the case at bar, the Court of Appeals ex-

be re-tried upon the same charge of second-degree felony murder because of double jeopardy considerations. . . . Nor can he be retried on any lesser included offenses if the jury was not charged upon those lesser included offenses. *Bean v State,* 469 So 2d 768 (Fla App, 1984)*.* As a general rule, a defendant may be retried on lesser offenses after a reversal of the conviction on the greater offense if all of the constituent essential elements of the lesser offense are not included within the elements of the greater offense. *Bell v State,* 437 So 2d 1057 (Fla, 1983). [*Webster, supra* at 784-785.]

[28] The defendant who successfully appeals a conviction, on any grounds other than insufficient evidence, is generally held to have waived his double jeopardy protection *with respect to that conviction.* The defendant does not waive double jeopardy guarantees with respect to those offenses for which he has been acquitted or impliedly acquitted. *Green, supra* at 192-194.

[29] *White, supra* at 259.

tended the implied acquittal doctrine to a lesser-included offense of felony murder. It reasoned:

> In the original prosecution for felony murder, armed robbery was the underlying felony. It is clear that proof of that felony murder assumes proof of each element of armed robbery. Had the defendant been convicted of felony murder, which . was later reversed, then, a second trial for armed robbery would not have been precluded under *Payne.* The relationship between armed robbery and second-degree murder is altogether different, however. Proof of second-degree murder does not require proof of an underlying offense. Under the rule of *Payne,* conviction of second-degree murder does not ipso facto operate to bar a second prosecution for armed robbery. But another step is necessary in the analysis. In this case, the only difference between second-degree murder and felony murder is the concurrent commission of armed robbery to elevate second-degree to first-degree. See *People v Aaron,* 409 Mich 672, 719, 730; 299 NW2d 304 (1980). The first jury found a murder had been committed, but it did not find an armed robbery had been committed sufficient to elevate its verdict to first-degree murder. Simply put, the jury did not find an armed robbery or its verdict would have been guilty of felony murder. *Aaron, supra* at 725. Thus, the jury's acquittal with regard to the felony-murder charge, by implication, served to acquit the defendant of armed robbery. By subtracting the elements of the convicted offense of second-degree murder from the acquitted offense of felony murder, that the jury also found insufficient proof of armed robbery is ineluctable. Thus, the defendant stood acquitted of armed robbery after the first trial. His retrial on that charge violated the principles of double jeopardy under *Payne.* [203 Mich App 420, 425-426; 513 NW2d 425 (1994).]

I would adopt this analysis. In a pre-*Aaron* Court of Appeals case, Justice RILEY used a similar

analysis and reached the same result. *People v Allen,* 94 Mich App 539, 545; 288 NW2d 451 (1980). In that case, the defendant *was* separately charged with felony murder and with armed robbery. He was convicted of second-degree murder and of armed robbery. A majority of the panel vacated the armed robbery conviction on double jeopardy grounds.[30] Justice RILEY reasoned:

> Felony murder, with which defendant was originally charged, is second-degree murder plus the additional element of committing, or attempting to commit, an enumerated felony. . . . Thus, if a first-degree murder verdict is to be returned, the homicide must be found to have occurred during the course of the felony. . . .
>
> It is clear from the instant record that the murder took place during the time that defendant asked for and received money, there being conflicting testimony as to whether it was *his* money, and thus, not robbery. . . . It is inescapable then, that in finding defendant not guilty of felony murder, while convicting him of second-degree murder, the jury must have also concluded that no robbery occurred at the time of the homicide. . . . Therefore, I conclude that defendant's conviction for armed robbery must be vacated. [*Id.* at 545.][31]

The instant case is distinguishable from the situation that arose in *People v Rosario,* 166 Ill App 3d 383, 385; 519 NE2d 1020 (1988). There, the defendant was charged separately with felony

---

[30] Concurring, Judge KAUFMAN used a same-elements approach. *Id.* at 546-547.

[31] Justice RILEY continued and stated that *trying* a defendant for both the felony and the underlying felony would violate the double jeopardy guarantee. *Id.* at 545-546. She later reaffirmed her position in *People v Ferrell,* 99 Mich App 609, 612; 299 NW2d 366 (1980) (RILEY, J., concurring): "[P]rosecution for felony murder and armed robbery presents a valid double-jeopardy claim." Another panel questioned her approach and argued that the Double Jeopardy Clause applies to *convictions,* not simply alternative counts within one proceeding. *People v Gibbs,* 120 Mich App 485, 494; 328 NW2d 65 (1982) (emphasis supplied).

murder and with the underlying felony, arson.[32] The jury acquitted him of all murder counts, but deadlocked on the arson counts. He was retried and convicted of arson. The court affirmed the conviction, determining that felony murder required an additional element beyond the elements of arson. *Id.* at 389. It reasoned that an acquittal on the greater charge did not necessarily imply an acquittal on the lesser charge. The case at bar presents a different situation because the *Garcia* jury *did* convict the defendant of murder and because Garcia was not separately charged with armed robbery in the first trial.

## VII

The lead opinion contends that the first jury did not have a full opportunity to *convict* the defendant,[33] allegedly because it did not have a "choice." RILEY, J., *ante* at 451. I disagree. As instructed, the jury certainly had ample choices: it could find the defendant guilty of murder and mark the box for guilty of second-degree murder; alternatively, it could find the defendant guilty of armed robbery and mark the box for guilty of armed robbery; it could find the defendant guilty of both murder and armed robbery and mark the box for guilty of felony murder; and finally, it could find the defendant not guilty of either murder or armed robbery and mark the box for not guilty of felony murder.

[32] The defendant initially was charged with multiple counts of murder, arson, and aggravated arson for a fire that killed a young child.

[33] The lead opinion relies on *Potts v State,* 258 Ga 430; 369 SE2d 746 (1988). In *Potts,* the jury instructions and the verdict form presented the charge of kidnapping, they did not mention the count that was actually charged: kidnapping with bodily injury. *Id.* at 432-433. The *Potts* court held that the verdict of guilty of that count was opaque. *Id.* The case is readily distinguishable from the instant case, where the jury instructions and verdict form specifically addressed the charge of armed robbery.

Additionally, as I have already discussed, I find no "extraordinary circumstance" that prevented the first jury from *convicting* the defendant of armed robbery. In fact, it had *two* opportunities. Moreover, under Justice RILEY's approach in *People v Allen,* and as discussed above under my reading of *Wilder* and *Aaron,* the defendant could *not* have been separately sentenced for convictions of both second-degree murder and armed robbery. Therefore, there was no error that prevented conviction.

The discussion in the lead opinion of *Johnson v Commonwealth,* 221 Va 736; 273 SE2d 784 (1981), is incomplete. It states that the *Johnson* jury "did not resolve the issue of the defendant's guilt because, in order to convict the defendant of armed robbery, it would have had to ignore the court's instructions." RILEY, J., *ante* at 453. The lead opinion extends this finding to the instant case and states that the instant jury "was precluded from determining defendant's guilt or innocence with regard to armed robbery." *Id.* at 454. What the lead opinion has failed to provide is a complete picture of the jury instructions in *Johnson.* There, the defendant was separately charged in three counts of what would be the corresponding theories in our state of felony murder, robbery, and felony-firearm.[34] The trial court instructed the jury that *if* it found the defendant guilty of felony murder, it *must* return a verdict of not guilty on the robbery count. *Id.* at 738. However, in order to find the defendant guilty of felony murder, the jury had to find him guilty of the underlying felony of robbery. Therefore, the jury instructions were merely an attempt to avoid multiple convictions of the same offense. The *Johnson* court properly concluded that the jury in fact had found the

---

[34] The Virginia statutes were capital murder, robbery, and use of a dangerous weapon.

defendant guilty of robbery because it followed the jury instructions and found the defendant guilty of the felony-murder count. *Johnson* has no application to the instant case, where the defendant was *not* convicted of felony murder.

The lead opinion seems to argue that there is no such doctrine of implied acquittal. RILEY, J., *ante* at 454. It argues that an implicit acquittal requires a "clear and articulable decision of guilt . . . or innocence . . . ." *Id.* My response is that if the decision is clear and articulable it is *not* an implicit decision—it is an express decision. The whole point of *Green* was to allow common-sense reasoning in interpreting jury verdicts that are not explicit.[35]

Further, the lead opinion would have it both ways: it argues that an appellate court "may not speculate regarding a jury's conclusions." RILEY, J., *ante* at 461, n 25. Yet, that is exactly what the lead opinion is doing—speculating. I am certainly not persuaded by its surmise that the jury *may* have rejected felony murder out of an "exercise of lenity." *Id.* at 452. If we are going to speculate, I would argue that it is more reasonable to conclude that if the jury wanted to be *lenient,* it could have convicted the defendant of the crime that he allegedly was actually participating in, which was the armed robbery, rather than the more severe crime

[35] The lead opinion cites *Edmonds v United States,* 106 US App DC 373, 379; 273 F2d 108 (1959). There, the defendant was retried *only* on the charge for which he was actually convicted. There is absolutely no contention in the instant case that Garcia could not have been retried for second-degree murder.

The lead opinion also relies on *United States v Gooday,* 714 F2d 80 (CA 9, 1983). There, the court relied on the notice purpose of an indictment. It reasoned that notice extends to the lesser-included offenses that are actually presented to the jury. It concluded that "lesser included offenses should be treated as if they had been specified in separate counts of the indictment." *Id.* at 83. *Gooday* should not apply to cases where collateral estoppel bars retrial.

that he was only vicariously in jeopardy of committing, which was the murder.

The lead opinion goes to great lengths to discuss inconsistent verdicts, but has not explained to me how the jury verdict in this case was inconsistent. The lead opinion relegates to a footnote the precedent-setting *Aaron* case. *Id.* at 460, n 25. The lead opinion rests its conclusion on its determination that the verdict was "inherently ambiguous." *Id.* at 466. Yet it has not explained how *Aaron,* and specifically how the actual jury instructions that were given in this case, do not support the verdict that the jury rendered. See *Aaron, supra* at 725. This verdict was anything but ambiguous. We should not speculate with regard to why the jury did not want to convict the defendant of felony murder. We can only read the entire record and determine what the jury did in fact do. The jury followed the instructions that were given to it, and it found one of the elements of felony murder missing. It did find the defendant guilty of murder.[36] The only difference between murder and felony murder that the jury was aware of was the felony. Common sense should lead us to a common-sense conclusion.

## VIII

In conclusion I would find that the defendant's double jeopardy guarantee was violated when he was twice placed in jeopardy of the offense of armed robbery. I would affirm the decision of the Court of Appeals.

[36] The discussion in the lead opinion of *People v Goss (After Remand),* 446 Mich 587; 521 NW2d 312 (1994), is also illusive. There, we held that collateral estoppel could not be invoked against a defendant who was *convicted* of an essential element of the compound offense. *Id.* at 599, 610. In the instant case, the defendant was neither convicted, nor impliedly found guilty, of the essential element of armed robbery.

LEVIN, J., concurred with CAVANAGH, J.

BRICKLEY, C.J. (for affirmance). The lead opinion concludes that the doctrine of collateral estoppel does not apply in this case, reasoning that the jury did not render a final verdict regarding defendant's armed robbery charge in his first trial. I believe that the doctrine of collateral estoppel is fully applicable in this case and requires reversal of defendant's conviction of armed robbery. While I concur with the collateral estoppel analysis of Justice CAVANAGH, I write separately to express my view that a reviewing court should assume a rational jury in applying the doctrine of collateral estoppel.

The Double Jeopardy Clause is an explicit provision of the United States and Michigan Constitutions. In analyzing questions of double jeopardy, one must bear in mind what is said to be "fundamental" to the Double Jeopardy Clause: the constitutional right of a defendant not to be further prosecuted following a jury verdict of not guilty. *United States v Martin Linen Supply Co,* 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977). This rule is absolute, *Burks v United States,* 437 US 1, 16; 98 S Ct 2141; 57 L Ed 2d 1 (1978), and therefore criminal defendants cannot be further prosecuted following an acquittal.

At issue in this appeal is whether defendant was acquitted of armed robbery in his first trial. The lead opinion unnecessarily confuses the doctrines of implied acquittal and collateral estoppel in its discussion of the latter, thereby clouding its analysis of this issue. See *ante* at 458. While both doctrines are a part of double jeopardy, they require distinct analyses. In *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the United States Supreme Court defined collateral

estoppel and concluded that the Double Jeopardy Clause encompasses the concept of issue preclusion:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and full judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
>
> \*   \*   \*
>
> The ultimate question to be determined, then, . . . is whether this established rule of federal law, is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace, it surely protects a man who has been acquitted from having to "run the gantlet" a second time. [*Id.* at 443, 445-446. Citations omitted.]

*Ashe* requires that an appellate court determine, after a thorough search of the trial record, what issues a jury *must* have decided in reaching its verdict. If the jury *might* not have decided an issue, it will not be foreclosed. A court must decide whether a jury could have based its decision upon an issue other than that which the defendant seeks to preclude from consideration. *Id.* at 444. It is noteworthy that this rule will generally favor the prosecution. If anything, error is likely to be in the prosecution's favor, because a jury will often determine many issues without the verdict and record revealing what it did. See note, Ashe v Swenson: *Collateral estoppel, double jeopardy, and inconsistent verdicts,* 71 Colum L R 321, 324 (1971).

In *Ashe,* the Supreme Court established that a reviewing court should presume a rational jury.

The Court stated that a reviewing court must "conclude whether a *rational* jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444 (emphasis added). The Supreme Court reiterated this presumption when it concluded in *Ashe* that "[t]he single *rationally* conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." *Id.* at 445 (emphasis added).

In *Turner v Arkansas,* 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972), a case factually similar to this case, the Court again presumed a rational jury. In *Turner,* the defendant, his brother, the decedent, and a fourth person played poker. Sometime after their game, the decedent was robbed and murdered. The defendant was charged with murder on a felony-murder theory and acquitted, after which he was charged with robbery. The state's theory was that this second prosecution was not foreclosed by the earlier acquittal because the jury may have concluded that the defendant and his brother robbed the decedent, but that only the brother actually committed the murder. The Court rejected this leniency argument, stating that if the jury had "found petitioner present at the crime scene, it would have been obligated to return a verdict of guilty of murder," as provided by the judge's instructions that any party to the felony would be guilty of felony murder. *Id.* at 369. Thus, *Turner* indicates that possibilities of jury leniency or compromise are not to be taken into account in applying the *Ashe* rule of collateral estoppel.

The lead opinion states that "*Ashe* and *Turner* involve situations in which an appellate court was able to review the instructions and unequivocally determine that the jury had rendered a decision

that precluded a subsequent trial." *Ante* at 459. A careful review of the trial record established that this is no less true in the case presently before us.[1] In defendant's first trial, the jury, after being instructed on the charges of felony murder, second-degree murder, and armed robbery, returned a verdict of guilty of second-degree murder. The jury had been carefully instructed that the only difference between second-degree murder and felony murder was the aggravating circumstance of armed robbery. If the jury had also found an armed robbery, it would have been obligated to return a verdict of first-degree felony murder. Because the jury did not return a verdict of guilty of first-degree murder, but did find second-degree murder, it must have acquitted defendant of armed robbery.

The lead opinion counters that "the jury *only* spoke with regard to second-degree murder" and did not render a full and valid judgment with regard to armed robbery. *Ante* at 458. In essence, the lead opinion has concluded that the jury *may* have acquitted the defendant in spite of what the law prescribes. That is, the jury, even though it concluded that defendant was guilty of second-degree murder and armed robbery, may have nullified the rigor of the criminal law and acquitted defendant of first-degree felony murder in an act of leniency or compromise. On the basis of this speculation, the lead opinion concludes that the defendant may again stand trial for armed robbery.

If this is in fact what the jury did in defendant's first trial, it acted within its powers, if not inconsistently. It has long been established that juries may so act. In *Dunn v United States,* 284 US 390;

---

[1] For a full discussion and review of the trial record, see opinion of CAVANAGH, J. at 480-487.

52 S Ct 189; 76 L Ed 356 (1932), a case not involving double jeopardy, the United States Supreme Court held that inconsistent verdicts, i.e., verdicts that cannot be rationally reconciled, are not impermissible. In that case, the defendant was charged with three counts: maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor, unlawful possession of intoxicating liquor, and unlawful sale of such liquor. The jury acquitted him of the second and third counts and found him guilty of the first. The defendant argued that the verdicts regarding the second and third counts were inconsistent with the verdict on the first count, and that he was therefore entitled to be discharged. The Court held that a defendant convicted by a jury of one count cannot attack the conviction because it was inconsistent with the verdict of acquittal of another count.

This rule makes good sense,[2] and in *People v Vaughn*, 409 Mich 463; 295 NW2d 354 (1980), this Court adopted it as applicable in this state. In pertinent part this Court justified the rule as follows:

The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jurors reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend

[2] As stated by Justice Rehnquist, the *Dunn* rule embodies a prudent acknowledgment of several factors. For example, inconsistent verdicts are not necessarily a windfall to the government at the defendant's expense; a jury convinced of guilt of several charges, may through lenity or compromise arrive at an inconsistent verdict. Moreover, a criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. See *United States v Powell*, 469 US 57; 105 S Ct 471; 83 L Ed 2d 461 (1984).

that an acquittal on one count and conviction on
another would serve as the reason for defendant's
release. [*Id.* at 466.]

While I agree that a conviction should not be
discharged on appeal because of an inconsistent
verdict, this rule of inconsistent verdicts is inapplicable to the double jeopardy case at bar.

As the lead opinion itself states, an appellate
court should not speculate regarding a jury's conclusions.[3] It is a well-established principle that it is
not the proper role of this or any other appellate
court to speculate with regard to what the jury
may have been thinking. See, e.g., *People v Chamblis,* 395 Mich 408, 426; 236 NW2d 473 (1975). This
rule against speculation is in part the basis for not
permitting defendants to challenge inconsistent
verdicts on appeal. In *Dunn,* Justice Holmes stated
for the Court that "the [inconsistent] verdict may
have been the result of compromise, or of a mistake on the part of the jury . . . . *But verdicts
cannot be upset by speculation or inquiry into
such matters." Id.* at 394 (emphasis added). Nevertheless, it is such speculation that serves as the
basis for the conclusion of the lead opinion that
defendant may again stand trial for armed robbery.

If an appellate court is not to speculate, it must
presume the jury will act in a particular manner.
The Supreme Court clearly ruled in *Ashe* and
*Turner* that a reviewing court must presume a
rational jury in applying the doctrine of collateral
estoppel. This may appear contrary to the Court's
ruling in *Dunn* and its progeny. However, *Ashe*
and *Dunn* present two very different contexts with
different policy considerations. *Ashe* considers jury
verdicts in the context of successive prosecutions

[3] *Ante* at 460, n 25.

and, specifically, the collateral estoppel doctrine. *Dunn* considers jury verdicts in simple appeals. As one commentator has stated:

> The *Ashe* and *Dunn* situations are distinctly different, however. In *Ashe* the assumption of the jury's rationality is made for the purpose of saving defendants from having to relitigate issues decided in their favor, in furtherance of the policy of the double jeopardy clause. Where a single jury verdict is involved, however, such a double jeopardy consideration is not relevant, and allowing to the jury a large measure of discretion would seem to comport with its role in the Anglo-American legal system. [Note, *supra,* 71 Colum L R 332-333.]

Hence, in the context of successive prosecutions, the presumption of jury rationality is necessary to guard the constitutional guarantee against double jeopardy and the interests it protects, such as harassment by the state and the preservation of the finality of judgments.

In conclusion, the jury's verdict in defendant's first trial may or may not have been the product of leniency or compromise. This Court cannot know the answer to this question, and it should not speculate. The United States Supreme Court, for sound reasons, has ruled that appellate courts should presume a rational jury when applying the doctrine of collateral estoppel.

LEVIN and CAVANAGH, JJ., concurred with BRICKLEY, C.J.

WEAVER, J., took no part in the decision of this case.