*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRESHAUN LEE TERRANCE,

        Defendant-Appellant.

UNPUBLISHED
March 5, 2019

No. 343154
Wayne Circuit Court
LC No. 17-005253-01-FC

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals by leave granted the trial court's order denying his motion to dismiss a charge of torture, MCL 750.85. Defendant argues that the charge violates the issue-preclusion component of the Double Jeopardy Clause and constitutes an impermissible exercise of prosecutorial vindictiveness. We agree with the trial court's ruling regarding prosecutorial vindictiveness, but hold that defendant may not be tried for torture after a jury necessarily decided in a prior trial that defendant did not commit the assault against the victim culminating in her death. Accordingly, we reverse and remand.[1]

## I. BACKGROUND

The charges in this case arise out of the killing of defendant's girlfriend, Dalona Tillman, by suffocation, preceded by a severe beating, at their home on December 15, 2015. Defendant denied the charges and told police that when Tillman returned to their home after what was to be a trip to the grocery store, she was badly beaten on her body and face and said she was dying. Defendant called 911, and first responders found Tillman unresponsive; she was later pronounced dead. The cause of death was asphyxiation. It was determined based on injuries to and discoloration around Tillman's mouth that she had been "smothered." The autopsy revealed

---

[1] We review de novo questions of constitutional law. *People v Leblanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

extensive injuries on Tillman's body, including 71 abrasions, 7 incision wounds, and bruising over much of her body. According to the medical examiner, the great majority of Tillman's injuries were "fresh."

Defendant was tried before a jury on charges of first-degree premeditated murder and first-degree felony murder. The predicate felony for the felony-murder charge was torture, though it was not charged as a separate individual crime. The jury was instructed on second-degree murder as a lesser included offense for both charges. After two days of deliberation, the jury acquitted defendant of first-degree murder and the lesser offense of second-degree murder. The jury was unable, however, to reach a verdict on the felony-murder charge.

The prosecution then charged defendant a second time with felony murder, and defendant pleaded guilty to second-degree murder. However, after appointment of appellate counsel, defendant filed a motion to withdraw his plea, vacate his conviction, and dismiss the charge against him. Defendant contended that, because he was acquitted of second-degree murder in his first trial, he could not have been recharged with felony murder or second-degree murder and so his conviction of the latter constituted a double jeopardy violation. The prosecutor conceded that defendant was entitled to this relief under United States Supreme Court precedent, and the trial court granted the motion.[2]

The prosecutor then charged defendant with torture, and defendant again moved to dismiss, arguing that the charge constituted (1) a violation of double jeopardy and (2) a vindictive prosecution. With respect to double jeopardy, defendant argued that the jury necessarily decided that he was not the perpetrator of the assault against Tillman and therefore he could not be tried on that issue again. In response, the prosecution contended that the torture charge did not implicate double jeopardy concerns because defendant had only been acquitted of murder, leaving open the possibility that defendant tortured Tillman but did not kill her. The trial court denied defendant's motion, concluding that the jury's acquittal of murder did not necessarily imply a finding that defendant was not guilty of torture. The court also found that defendant failed to meet his burden of demonstrating prosecutorial vindictiveness.

II. ANALYSIS

A. DOUBLE JEOPARDY

Defendant argues that the current torture charge against him violates the issue-preclusion component of the Double Jeopardy Clause. He asserts that the jury in the first trial necessarily

---

[2] The prosecution nevertheless appealed arguing that *Yeager v United States*, 557 US 110; 129 S Ct 2360; 174 L Ed 2d 78 (2009), was wrongly decided and we affirmed. *People v Terrance*, unpublished order of the Court of Appeals, entered August 24, 2017 (Docket No. 338938). The prosecution then filed for and was denied leave to appeal to the Michigan Supreme Court before also being denied certiorari by the United States Supreme Court. *People v Terrance*, 501 Mich 911 (2017), cert den ___ US ___; 138 S Ct 1334; 200 L Ed 2d 515 (2018).

decided that he was not the perpetrator of the assault on December 15, 2015, that involved the victim's beating and suffocation. We agree.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." US Const Amend V. See also Const 1963, art 1 § 15. The Double Jeopardy Clause serves "two vitally important interests." The first interest is to protect against multiple prosecutions, and the second interest is to preserve "the finality of judgments." *Yeager v United States*, 557 US 110, 117-118; 129 S Ct 2360; 174 L Ed 2d 78 (2009) (quotation marks and citation omitted). The Double Jeopardy Clause includes the concept of issue preclusion, also known as collateral estoppel. *People v Garcia*, 448 Mich 442, 497; 531 NW2d 683 (1995). Thus, in criminal proceedings, "when an issue of ultimate fact has once been determined by a valid and final judgment of acquittal, it cannot again be litigated in a second trial for a separate offense." *Yeager*, 557 US at 119. To determine what a jury necessarily determined in the first trial, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v Swenson*, 397 US 436, 444; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (quotation marks and citations omitted).

For example, in *Ashe* a jury acquitted the defendant of robbing a participant in a poker game, and the prosecution then charged the defendant with robbing a different participant at the same game and obtained a conviction. *Id*. at 437-440. The United States Supreme Court held that the second conviction was barred by the issue-preclusion aspect of the Double Jeopardy Clause because, under the facts of that case, the first jury necessarily determined that there was a reasonable doubt that the defendant was one of the robbers. *Id*. at 443-446. In *Bravo-Fernandez v United States*, ___ US ___; 137 S Ct 352; 196 L Ed 2d 242 (2016), the Supreme Court reaffirmed the principle of issue preclusion in criminal cases but held that it did not apply in that case.

The record provided to us establishes that the jury was asked to find that defendant murdered Tillman in his home on December 15, 2015, as the final act of an assault in which he also inflicted a severe beating and that the extensive beating and suffocation constituted the crime of torture.[3] The prosecution emphasized that point during closing argument, referring to the beating and killing as a single attack: "I submit to you that the only issue you may have, in your mind, at the, at this moment, the only element that you will have to deliberate when you go back into that room, is whether or not you think the defendant did *it*." (Emphasis added). Throughout the trial, the prosecution's evidence and argument were directed toward a finding that defendant was the victim's sole assailant, that the assault was a continuous or near-

---

[3] The elements of torture are as follows: (1) the defendant had custody or physical control over the victim, (2) the defendant exercised custody or physical control over the victim without consent or lawful authority, (3) the defendant intentionally caused great bodily injury and/or severe mental pain or suffering to the victim. MCL 750.85(1); M Crim JI 17.36.

continuous event, beginning with a beating and culminating in defendant suffocating the victim. The defense asserted that defendant was not the party responsible for either the beating or the murder. The question, therefore, as presented by both sides, was whether defendant was the victim's assailant on December 15, 2015; neither side suggested that defendant committed only the murder or only the beating. Accordingly, we conclude that the prosecution's claim that defendant tortured the victim on that day is barred under the doctrine of issue preclusion by the jury's verdict acquitting defendant of murder.

The prosecution argues that the acquittal on the first- and second-degree murder charges does not exclude the possibility that the jury might have convicted defendant of torture had it been separately charged. To a large degree, this argument rests on the fact that the jury did not reach a verdict on felony murder. The prosecution argues from this fact that the question of whether defendant committed torture was not answered. Were this a question of the more typical double jeopardy concept controlled by *Blockburger*,[4] we would agree because the charges on which defendant was acquitted did not contain torture as an element. However, the issue preclusion-aspect of double jeopardy is governed by different rules which are intended to protect the finality of judgments. When applying issue preclusion, we may not consider the meaning or effect of the jury's failure to reach a verdict on a charge.[5] *Yeager*, 557 US at 122. The question turns not on the elements of the charged crimes, but rather on the actual evidence and factual arguments made at trial. *Id*. at 120. In other words, following his acquittals, defendant may only be charged with torture in a second trial if there was evidence or argument *at the first trial* from which the jury could have concluded, even by inference, that defendant was guilty of torture despite the fact that he did not commit the murder. In this case, there was none.

The prosecution also argues that by acquitting defendant of murder, the jury did not necessarily find that defendant did not kill Tillman because the jury was not asked to consider whether defendant committed involuntary manslaughter. This argument fails for several reasons. First, the prosecution may not rely on speculation about the basis for the acquittals. Rather it must show evidence to support its theory. Second, a rational view of the evidence does not support a theory of accidental killing or involuntary manslaughter. Involuntary manslaughter is

_____

[4] Under *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), two offenses are not the same for double jeopardy purposes if they pass the "same elements" test, i.e., each requires proof of a fact that the other does not. *People v Nutt*, 469 Mich 565, 576; 677 NW2d 1 (2004).

[5] Thus, the fact that the jury was hung on felony murder is wholly irrelevant to our analysis. Instead, we must focus on the jury's verdict of acquittal, "which represents the community's collective judgment regarding all the evidence and arguments presented to it." *Yeager*, 557 US at 122. Our dissenting colleague notes this principle, but nonetheless relies on the fact that the jury was instructed to consider the crimes of murder and felony murder separately and concludes that "the jury did not necessarily determine that defendant did not torture the victim." Thus, it is clear to us that the dissent is relying on the jury's inability to reach a verdict on felony murder.

"the unintentional killing of another, committed with a lesser mens rea of gross negligence or an intent to injure . . . ." *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009) (quotation marks and citations omitted). In this case, the medical examiner testified that "it can take anywhere from ninety seconds, up to two and a half to three minutes" to smother an adult. Thus, the evidence is this case is inconsistent with an unintentional killing. Moreover, the prosecution elected not to seek an instruction on the lesser-included offense of involuntary manslaughter. It may not forfeit its right to such an instruction in the first trial and then rely on the absence of that charge to speculate about what the jury might have done had it received such an instruction.

In sum, the record establishes that the prosecution asked the jury to find that defendant was the perpetrator of the assaultive acts against Tillman on the day of her death. The record at trial provides no basis to conclude that a rational juror could have decided that defendant did not suffocate the victim but did commit the beating immediately preceding that act. As the prosecution argued, the ultimate issue of fact in the first trial was whether defendant was the one who perpetrated the entire assault, i.e., whether defendant "did it." The jury's decision to acquit defendant of murder in light of the record evidence cannot support a conclusion that defendant committed the assault culminating in that murder. Accordingly, the prosecution is barred by issue preclusion from relitigating that issue in a second trial.[6]

Our dissenting colleague suggests that we are improperly prohibiting the prosecution from adjusting its trial strategy upon retrial after a hung jury. This argument puts the cart before the horse. Certainly, when there is a retrial following a hung jury, the prosecution may alter its strategy and introduce different evidence on retrial. See *Yeager*, 557 US at 118. However, that does not mean that a retrial is necessarily permissible; it is a rule that comes into play only if a retrial is not barred by some other rule of law such as issue preclusion. See *id*. at 118-119. The dissent speculates that on retrial the prosecution may have evidence from which a torture conviction could be obtained. This view ignores the fact that we must determine the question of

---

[6] We note that this does not preclude new charges based upon assaults that were not part of the beatings that culminated in the victim's death. At trial, the medical examiner testified that while the majority of the injuries she found on Tillman's body were "fresh," meaning that they could have occurred anytime within a 24-hour period before her death, several injuries were more than a day old. The prosecution clearly relied on the victim's most recent injuries in trying to prove to the jury that defendant tortured the victim. For the reasons discussed, the jury's verdict shows that it found at least a reasonable doubt as to whether defendant caused those injuries. However, at least at this point, we cannot dismiss the possibility that the prosecution may be able to prove that some of the victim's injuries occurred before the acts for which defendant has already been tried. To the degree the new charge of torture is based upon alleged acts that occurred prior to the day on which the victim was killed, it is not barred by issue preclusion. To be clear, however, no evidence concerning any assaultive behavior at issue in the first trial may be admitted as direct evidence of guilt or as other bad acts evidence.

issue preclusion based on the record of the first trial, not by what might be done differently at a second trial. Thus, the dissent miscomprehends the purpose of the issue-preclusion component of double jeopardy, which is to ensure the finality of the jury's verdict. See *id*.

## B. PROSECUTORIAL VINDICTIVENESS

Defendant also argues that the torture charge constitutes prosecutorial vindictiveness. We disagree.

Prosecutorial vindictiveness occurs when a person is punished for exercising a statutory or constitutional right. *People v Ryan*, 451 Mich 30, 35-36; 545 NW2d 612, 616 (1996). Such punishment constitutes a violation of due process. *Id*. "[T]here are two types of prosecutorial vindictiveness, presumed vindictiveness and actual vindictiveness." *Id*. Actual vindictiveness exists only when there is "objective evidence of an expressed hostility or threat suggests that the defendant was deliberately penalized for his exercise of a procedural, statutory, or constitutional right." *Id.* (quotation marks, citation, and footnote omitted). Presumptive vindictiveness, on the other hand, has been found "in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right . . . ." *United States v Goodwin*, 457 US 368, 373; 102 S Ct 2485; 73 L Ed 2d 74 (1982). In order to prove presumptive vindictiveness, a defendant must show a reasonable likelihood of vindictiveness. *Id*. "[T]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *United States v Gallegos-Curiel*, 681 F2d 1164, 1169 (CA 9, 1982).

Defendant argues that the prosecution's decision to charge him with torture after he was acquitted of first- and second-degree murder, and only after he successfully challenged his plea, establishes a presumption of prosecutorial vindictiveness. We decline to hold that a presumption of vindictiveness arises when the prosecution charges the defendant with an equivalent or lower offense after exercising a legal right. When the prosecution brings a more severe charge, this indicates a high likelihood that the new charge was intended to punish the defendant for asserting his rights and to discourage assertion of those rights. However, when the new charge carries the same or lesser punishment as the original charge, it is difficult to see how this punishes a criminal defendant for exercising a legal right or deters future defendants from asserting that right. Absent some additional proof of vindictiveness, we see no basis for concluding that a new charge that does not carry the possibility of greater punishment is a vindictive prosecution.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto