*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD CECIL CARDWELL,

Defendant-Appellant.

UNPUBLISHED
February 27, 2020

No. 343436
Genesee Circuit Court
LC No. 17-040970-FC

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

The jury convicted defendant, Ronald Cardwell, of kidnapping, MCL 750.349(1)(c), assault by strangulation, MCL 750.84(1)(b), and second-offense domestic violence, MCL 750.81(4), for conduct arising out of a December 16, 2016 incident with his ex-fiancé, AI. The trial court sentenced defendant as a second-offense habitual offender to serve concurrent sentences of 12 to 20 years' imprisonment for kidnapping, 95 months to 15 years' imprisonment for assault by strangulation, and 365 days in jail for domestic violence. Defendant appeals by right his convictions. For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND

Defendant and AI had a complex relationship. The couple had a son together, and defendant co-parented AI's child from a previous relationship. AI testified[1] that she lived in the house she and defendant owned during his incarceration from January to August 2016, but she moved out two weeks after he returned home. She stated that she and defendant had had sex once since his release from jail and that at the time of the incident in December, she was dating another

---

[1] At trial, AI appeared visibly distraught and refused to testify. The trial court held that she was unavailable as a witness and allowed the transcript of her testimony at the preliminary exam to be read to the jury.

man. Defendant testified that he and AI had once been engaged and that they had frequent casual sex.

At approximately 3:00 p.m. on December 16, 2016, AI went to defendant's home to get diapers for their son. Defendant followed AI into the upstairs room where she was changing their son and the two began to argue. AI testified that defendant accused her of "giving his pussy to everybody," and told her that if she was "gonna give it to everybody, [she was] gonna give it to him too." AI secretly recorded approximately a minute of the conversation on her phone, worried that something would happen. She testified that she asked defendant why he didn't "just go get some, uh, some somewhere else," and he replied, "I don't want theirs, I want yours. And . . . one way or another, I'm gonna get it today."

AI testified that defendant blocked her as she reached for the door and pulled her away from the window when she went to it. He then put her on the bed and placed their crying son outside the room. AI testified that, in an effort to get outside, she asked defendant if they could go get some alcohol "so I don't have to think about what's gonna happen." Defendant agreed, but AI testified that as they reached the front door, he blocked it, accused her of playing games, and demanded her keys. AI handed over her keys and went outside when defendant went to put on his shoes. She testified that she saw one of defendant's friends waiting in a car outside and walked toward it, believing that defendant would not do anything in front of his friend. AI said that defendant told his friend to leave, grabbed her by her neck, and dragged her up the driveway and into the house. Contrariwise, defendant testified that his friend was never there and that AI voluntarily left the house to grab defendant's dog, which had run outside, and that she returned to the house voluntarily.

AI testified that, once back in the house, defendant threw her on the couch, took their son out of her arms, and started choking her. She begged him to stop and he forced her into the stairwell and demanded that she go upstairs. When she refused, defendant choked her again until she lost consciousness. When she woke up, defendant was shaking and his hands were on her neck. AI testified that she told defendant to "just get it over with," and he pulled down her pants and forced her to have sex with him for 3-5 minutes. AI further testified that, after defendant finished, he made her swear on a bible that she would not tell the police. AI agreed, took her son, drove around the corner, and called 911. Defendant testified that the sex on the stairwell was consensual and not the violent interaction AI claimed, and that he and AI smoked a cigarette together before she left with their son. He testified that everything was fine and she was not crying or upset.

Officers dispatched to meet with AI reported that she seemed visibly upset and had red marks around both sides of her neck. AI went to the hospital to complete a sexual assault kit, and medical staff testified that she had bruising, redness, and scratches on her neck and back as well as redness to the vaginal area. Forensic samples taken from AI's neck and vaginal area were matched to defendant's DNA. Defendant was charged with first-degree criminal sexual conduct

during the commission of a felony (CSC-I), MCL 750.520b(1)(c),[2] kidnapping, assault by strangulation, and aggravated domestic violence, MCL 750.81a(2)[3].

The prosecutor filed a notice of intent to use MCL 768.27b to introduce at trial evidence of defendant's other acts of domestic violence. The evidence pertained to a prior incident of alleged assault by defendant against AI on January 17, 2016, which resulted in defendant being charged with criminal sexual conduct. The evidence included AI's testimony from a February 2, 2016 hearing concerning the January 2016 incident, testimony from Sergeant William Surface, who responded to that incident, and an 86-minute video of Sergeant Surface's interview with defendant at the police station. Over defendant's objection, the trial court ruled that the evidence was admissible pursuant to MCL 768.27b and that it was not "overwhelmingly prejudicial." In response to defense counsel's concerns, the court also noted that there were several non-character purposes for which the evidence could be used.

The prosecution introduced the other acts evidence as the final component of its case-in-chief. Immediately preceding presentation of the evidence, trial court gave the following instruction:

> Now, members of the jury, the Prosecutor is going to introduce some evidence of other acts of domestic violence for which the Defendant is not on trial. Before you consider such alleged acts as evidence against the Defendant, you must first find the Defendant actually committed those acts. If you find the Defendant did commit those acts, you may consider them in deciding if the Defendant committed the offenses for which he is now on trial. You must not convict the Defendant here solely because you think he is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crimes in this case or you must find him not guilty.

According to AI's February 2, 2016 hearing testimony, prior to the January 2016 incident, defendant had asked AI for sex multiple times and she had refused each time. The two exchanged messages on Facebook, during which AI referred to defendant as a rapist. Evidence was presented that on January 17, 2016, defendant went to AI's home to confront her and entered through an unlocked sliding glass door. Defendant shoved AI into the bedroom, shut the door, and told her, "[Y]ou want to know what rape looks like, this is what rape looks like." Defendant held AI down on the bed and pulled off her pants as she screamed for him to stop and tried to fight him off. AI testified that defendant stuck his fingers inside her vagina and rubbed his penis against her, which defendant testified was accidental. AI's boyfriend then entered the room and scuffled with defendant. AI ran from the house without her pants to a neighbor's house and asked him to call the police. Defendant walked out of the house, and then started to run when AI's boyfriend began to follow him. AI's boyfriend and the neighbor pursued defendant, tackled him, and held him until

---

[2] The jury ultimately deadlocked on this count.

[3] The jury found defendant guilty of a lesser domestic violence offense.

police arrived. Defendant was charged with criminal sexual conduct and ultimately convicted by plea of assault with intent to do great bodily harm, MCL 750.84(1)(a).

Defendant testified about both the January and December incidents. With regard to the January incident, defendant acknowledged that AI called him a "rapist" during a Facebook exchange, but professed not to know why. Subsequently, the prosecutor sought to impeach defendant by introducing evidence of the Facebook exchange between him and AI. Over defendant's objection, the trial court held that the messages were relevant to defendant's testimony and admissible as party admissions.

II. ANALYSIS

A. OTHER-ACTS EVIDENCE

Although defendant agrees that the prosecution may, subject to some limitations, introduce evidence of prior acts of domestic violence to show propensity to commit domestic violence pursuant to MCL 768.27b, he contends that the prosecution introduced cumulative, confusing, and unduly prejudicial other-act evidence that was impermissible under MRE 403. He maintains that AI's testimony from the January 2016 incident provided the jury with all the information it needed, and that the video of his interview with police and the Facebook messages were cumulative, confusing, and of low probative value; and thus, unduly prejudicial. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). Only relevant evidence is admissible, and evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401, 402. Nevertheless, a trial court may exclude even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In considering whether to exclude evidence pursuant to MRE 403, a court must ask: (1) whether the evidence was unfairly prejudicial, and (2) whether the probative value of the evidence is substantially outweighed by the danger of the unfair prejudice. *Cameron*, 291 Mich App at 611. "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock," and to the danger "that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citations omitted).

Where an accused is charged with domestic violence or sexual assault, evidence of other acts of domestic violence or sexual assault is admissible pursuant to MCL 768.27b, which states in relevant part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for

which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

As long as the evidence complies with the balancing test under MRE 403, evidence of a defendant's other acts of domestic violence or sexual assault is admissible for any purpose, including to show that defendant acted in accordance with a propensity for domestic violence, *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010), and to bolster the credibility of the victim, *People v Pattison*, 276 Mich App 613, 616; 741 NW2d 558 (2007).

## 1. POLICE INTERVIEW VIDEO

In assessing whether the video of defendant's police interview ran afoul of MRE 403, we first consider that other acts evidence of domestic violence and sexual assault can be admitted at trial pursuant to MCL 768.27b(1), and "a full and complete picture of a defendant's history tends to shed light on the likelihood that a given crime was committed." *Cameron*, 291 Mich App at 610 (quotation marks, citation, brackets, and ellipsis omitted). Further, to allay any confusion, the trial court provided a limiting instruction to the jury. The video provided a "full and complete picture of defendant's history" with AI, as well as of the January 2016 incident, through defendant's own words, not AI's allegations. Thus, it was relevant to the jury's determination of whether the other acts actually happened, relevant to the jury's assessment of AI's credibility, and showed defendant's pattern of acting violently toward AI, as well as patterns in the explanations of his actions. Therefore, although the video did cover some of the same ground that was covered by AI's testimony, it was not needlessly cumulative.

Defendant contends that the other-acts evidence was confusing and unduly prejudicial because of the amount of time the prosecutor spent presenting the evidence and the similarities between the January and December incidents. Defendant notes that the other-acts evidence constituted 35% of the prosecution's case. Accepting defendant's estimation for the sake of argument, defendant fails to explain why this is significant, particularly since 65% of the prosecution's case entailed evidence of the December 2016 incident, the prosecution presented the other-acts evidence last, and presentation of the other-acts evidence was preceded by the trial court's instructions to the jury on the purpose of that evidence and the jury's responsibility to determine defendant's guilt based solely on the evidence of the December 2016 event, not because defendant may have been guilty of other "bad conduct." Moreover, there is no evidence that the jury struggled to differentiate between the two incidents, and the similarities between the two cases are highly probative of defendant's propensity to commit the exact kind of violence against AI that was at issue at trial.

Defendant also contends that the other-acts evidence was inadmissible under MRE 404(b) because the prosecution could not show a non-character purpose for the evidence. It is clear from the record, however, that the prosecution sought to admit evidence of the police interview pursuant to MCL 768.27b, not MRE 404(b). Thus, the prosecution did not have to show a non-character purpose for the evidence. Pursuant to MCL 768.27b, the evidence was "admissible for any purpose for which it is relevant," subject to MRE 403. MCL 768.27b. Even so, in response to defense counsel's MRE 404(b) concerns, the trial court noted several non-character purposes that rendered the video admissible: to show that defendant acted in accordance with a plan, system, or scheme

of perpetrating domestic violence against AI, to show intent, and to show the absence of mistake or accident.

Finally, an evidentiary error will not warrant relief unless it affected the substantial right of a party, see MRE 103(a), or the refusal to take such action would be inconsistent with substantial justice, MCR 2.613(A). Generally, reversal is required only if the error was prejudicial. See *People v Snyder (After Remand)*, 301 Mich App 99, 111-112; 835 NW2d 608 (2013). Assuming for the sake of argument that the trial court abused its discretion by admitting the video of the police interview of defendant, defendant has not shown that the jury gave undue weight to the video in convicting him of the charges arising from the December 2016 incident. In fact, the jury was unable to come to a verdict on the charge of criminal sexual conduct and found defendant guilty of a lesser charge of domestic violence rather than aggravated domestic violence despite the corroboration of AI's testimony by the police and medical staff. This suggests that the jury was able to weigh the evidence regarding the charges arising from the December 2016 incident and come to an independent determination of defendant's guilt. Further, any undue weight the jury may have given the video was presumably cured by the court's instruction to the jurors that they must acquit defendant unless the evidence convinced them beyond a reasonable doubt that he committed the charged crimes. *People v Abraham*, 256 Mich App 265, 279; NW2d 836 (2003) ("Jurors are presumed to follow their instructions and instructions are presumed to cure most errors.").

On this record, we cannot say that the video of defendant's police interview regarding another act of domestic violence was unfairly prejudicial or that its probative value was substantially outweighed by unfair prejudice. *Cameron*, 291 Mich App at 611. In light of MCL 768.27b, defendant has not established that the evidence improperly injected considerations extraneous to the lawsuit. *Id*. Accordingly, we conclude that the trial court did not abuse its discretion by admitting this evidence.

## 2. FACEBOOK MESSAGES

As an initial matter, it appears that the trial court admitted evidence of the Facebook messages exchanged between defendant and AI preceding the January 2016 incident pursuant to MRE 801(D)(2)(A), as a party admission, and it was used to impeach his testimony at trial. Defendant claims that the Facebook exchange was not admissible under MRE 801(d)(2) because it also contained statements by AI that did not fall under the relevant hearsay exception. He further contends that its probative value was substantially outweighed by the danger of unfair prejudice or confusion because it pertained to the prior act of domestic violence and was needlessly excessive and cumulative. Again, we disagree.

To preserve an issue for appellate review, a party must make a timely objection and specify the same ground for challenge as the party seeks to assert on appeal. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Defense counsel objected to the prosecution's use of the Facebook messages to impeach defendant, but not on grounds that they were unduly prejudicial or contained inadmissible hearsay in the form of AI's assertions. Accordingly, this issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. In order to establish plain error, defendant must show (1) that an error occurred, (2) that the error was plain, i.e., clear, or obvious, and (3) that the plain error affected defendant's substantial rights. *People v*

*Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish the last element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id.*

Hearsay is an out-of-court oral or written assertion made by the declarant and offered into evidence to prove the truth of the matter asserted. MRE 801(a) and (c). Hearsay is inadmissible except as allowed by the Michigan Rules of Evidence. MRE 802. Among the exclusions from the category of hearsay are statements made by a party that are offered against that party. MRE 801(d)(2)(A).

The record shows that the prosecution sought to introduce the Facebook exchange between defendant and AI to impeach defendant after he testified that he did not know why AI would call him a rapist over Facebook messenger. On cross-examination, the prosecutor had defendant read into the record[4] excerpts from the Facebook message exchange that showed defendant assuring AI that if she had sex with him, he would provide childcare and she could avoid any "drama" with him. AI responded that she should not have to have sex with him to avoid drama. The exchange went back and forth, with defendant insisting that he missed AI and that all she had to do was give herself to him for a couple of minutes and she would be free of "drama." As the conversation escalated, defendant implied that if she continued to resist him, he was "going to land in jail for hurting your friend[5] and not seeing my kids for the rest of my life." Defendant later wrote, "How I want it is to have you for a few minutes and everything will be okay but you . . .]." To this, AI responded, "No. . . .'cause you want to be a rapist." Defendant replied, "I told you this the only way to keep from acting the way I do." The conversation continued with AI more than once calling defendant a rapist and insisting that he admit as much, and defendant maintaining that he was not going to change his mind, so she should "get ready for the . . . over and beyond." After AI replied that she was not worried and that defendant was going to jail, defendant answered: "That's what about to happen 'cause I'm done talking about it."

Defendant does not argue that his own statements in the Facebook exchange are inadmissible under MRE 801(d)(2)(A). Rather, he contends that the trial court should not have admitted the excerpts because they include statements made by AI. In this case, however, the prosecutor did not offer AI's statements in the Facebook exchange for the truth of the matter asserted, but rather, for the non-hearsay purpose of providing context for defendant's statements. Defendant had already testified that AI called him a rapist, but insisted that he did not know why. The prosecution offered the Facebook exchange, including AI's comments, not to prove that defendant was a rapist, but to impeach him with evidence calling into question his claims of ignorance. A statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay. *People v Musser*, 494 Mich 337, 350;835 NW2d 319 (2013). Accordingly, AI's part of the exchange was not hearsay, and the trial court did not abuse its discretion by admitting excerpts from the Facebook exchange for impeachment purposes.

---

[4] Defendant cleaned up and clarified some of the language in the Facebook messages as he read them into the record. The quotations provided are from the trial transcript.

[5] AI was dating someone else at the time.

The Facebook messages also survive the MRE 403 balancing test because their probative value outweighs any prejudicial effect. The messages were probative as to defendant's credibility, as they impeached his professed ignorance about why AI would refer to him as a rapist. In addition, they were highly probative in showing whether defendant intended to sexually assault AI during the January 2016 incident, and thus to show that defendant "actually committed" the prior acts the prosecutor sought to admit under MCL 768.27b.

Furthermore, even if the trial court should have excluded the excerpts under MRE 403, defendant cannot show that admission of the Facebook excerpts affected the outcome of the proceeding because the jurors did not appear to give the Facebook messages any undue weight. As previously mentioned, the jury convicted defendant of a lesser charge of domestic violence and deadlocked on the criminal sexual conduct charge which, as previously noted, indicates that the jurors were able to independently weigh evidence rather than blindly convict defendant based on prejudice regarding his character. Accordingly, we find no plain error requiring reversal.

## B.  KIDNAPPING CHARGE AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that his defense counsel was constitutionally ineffective for failing to object to the charge and conviction of kidnapping.[6] He points out that the jury did not convict him of CSC-1, and a charge of kidnapping under MCL 750.349 entails an intent to engage in criminal sexual penetration or criminal sexual contact. Defendant's argument lacks merit.

To establish ineffective assistance of counsel, defendant must show that "counsel's performance fell below an objective standard of reasonableness" and that, "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted). Because the trial court did not hold an evidentiary hearing on the matter, this Court's review is limited to the existing facts in the record.[7] *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

MCL 750.349 provides in relevant part:

> (1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do . . . the following:

*  *  *

---

[6] Defendant's last two issues were raised in a "Standard 4" brief, which defendant was entitled to file in propria persona pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

[7] Defendant did not request a *Ginther* hearing in the trial court, and this Court denied defendant's pro per motion to remand. *People v Cardwell*, Unpublished Order of the Court of Appeals, issued January 7, 2020, Docket No. 343436. See *People v Ginther*, 390 Mich 436 443-444; 212 NW2d 922 (1973).

(c) Engage in criminal sexual penetration or criminal sexual contact prohibited under chapter LXXVI with that person.

* * *

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

Defendant argues that because he was not convicted of criminal sexual conduct, there was no basis to charge or convict him of kidnapping under MCL 750.349. Defendant misapprehends the law.

First off, a jury's findings at trial do not implicate the propriety of a charge, and there was sufficient evidence to charge defendant with kidnapping. Secondly, a conviction of kidnapping under MCL 750.349 does not require that a defendant actually commit criminal sexual conduct; it merely requires proof beyond a reasonable doubt that the defendant knowingly restrained another person with the intent to "[e]ngage in criminal sexual penetration or criminal sexual conduct . . . ." *Id*. As already indicated, AI testified that defendant grabbed her by the neck, pulled her up the driveway and into the house, threw her on the couch, and started choking her. He then forced her into the stairwell and demanded that she go upstairs. When she refused, defendant choked her again until she passed out, and when she regained consciousness, defendant pulled her pants down and, according to her, forcibly penetrated her. A jury need only find that defendant restrained her with an intent to engage in criminal sexual conduct as described in the statute; it not need not find that the ultimate sexual encounter that transpired was criminal in nature. Thus, a hung jury on the CSC-1 charge is not incompatible with the jury's conviction of kidnapping under MCL 750.349.

To the extent defendant implies that the jury's verdict was inconsistent, and therefore erroneous as to the kidnapping conviction, we note that it is not impermissible for a jury to return inconsistent verdicts. See *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995). Furthermore, record evidence suggests that the verdicts are not, as defendant presumes, inconsistent. AI's testimony indicates that she told defendant she wanted to go to get some alcohol "so I don't have to think about what's gonna happen[,]" and while he had her pinned on the stairwell, she told him to "just get it over with." That a juror(s) might view this statement as somehow transforming a violent assault involving kidnapping and strangulation into a consensual sexual encounter could explain the jury's verdict on the kidnapping charge and its inability to reach a verdict on the charge of criminal sexual assault.

Because the record evidence was sufficient to allow reasonable jurors to find beyond a reasonable doubt that defendant committed kidnapping in violation of MCL 750.349, any objection to the charge of kidnapping or to defendant's conviction for kidnapping would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120, 125 (2010). Accordingly, defendant has failed to establish an ineffective assistance claim because he has not shown that "counsel's performance fell below an objective standard of reasonableness." *Armstrong*, 490 Mich at 289-290.

## C. JURISDICTION

Finally, defendant argues that the warrant for his arrest was invalid and unconstitutional because AI refused to testify, which made her not a complainant, and thus, the trial court lacked both subject-matter and personal jurisdiction over him. In addition to not including this issue in his statement of issues presented, which subjects it to waiver of appellate review, MCR 7.212(C)(5); *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011), defendant provides no relevant legal support for his argument, and we are not obligated to discover and rationalize the basis for his claims, *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regardless, defendant's argument lacks merit.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra